Elmer F. WILLIAMS II, Appellant,

v.

HOUSTON FIREMEN'S RELIEF AND RETIREMENT FUND,[1] Donny R. Meyers, George E. Loudermilk, Maxie R. Patterson, D. Grady Perdue, and The City of Houston, Appellees.

No. 01–99–01361–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 12, 2003.

Rehearing Overruled Oct. 17, 2003.

---

1. The Houston Firemen's Relief and Retirement Fund ("the Fund") is now known as the Houston Firefighter's Relief and Retirement Fund.

Frederick Thomas Dietrich, Frederick T. Dietrick, PLLC, Houston, TX, for Appellant.

William A. Worthington, Clifford Bowie Husted, Strasburger & Price, L.L.P., Car-

ole Snyder, Asst. City Atty., Houston, TX, for Appellees.

Panel on rehearing consists of Justices HEDGES, TAFT and EVELYN V. KEYES.

## OPINION ON REHEARING

EVELYN V. KEYES, Justice.

Appellant, firefighter Elmer F. Williams II, appeals a take-nothing judgment rendered after the trial court denied Williams's motions for partial summary judgment and granted (1) the summary judgment motions of the Houston Firemen's Relief and Retirement Fund (the Fund) and the individual appellees, who were the Fund's board members (collectively, "the trustees"), and (2) the summary judgment motions and dismissal motion of appellee the City of Houston ("the City"). We issued our original opinion in this appeal on December 27, 2001. Appellant moved for rehearing, as did the Fund and the trustees. We grant Williams's motion for rehearing. We deny the Fund's and trustees' motion as moot. The Court's prior opinion and judgment of December 27, 2001 are vacated, set aside, and annulled, and this opinion and judgment are issued in their stead. We modify the judgment and affirm as so modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Williams joined the Houston Fire Department ("HFD") and the Fund in 1990, after six years and five months of service with two other cities' fire departments, neither of which had statutory firefighters' retirement funds like Houston's. In 1995, Williams sought to purchase prior service credit ("PSC") under the firemen's retirement-fund statute ("the retirement statute") for these six years and five months of service, to be applied toward his retirement with HFD. The PSC provision of the former retirement statute, section 30, provided:

> A firefighter who transfers from the fire department of one city to that of a city covered by this Act and desires to participate in the fund of that city shall: ... [meet three requirements, including paying "into the fund of that city an amount equal to the total contribution he would have made had he been employed by that city instead of the city from which he transferred."].[2]

The statute was silent as to whether the city from which the firefighter transferred had to have a fund. While Williams's request was pending, the Fund adopted guidelines construing section 30: years worked outside Houston could be credited towards retirement only if the former city had a similar statutory firefighter's fund. (The parties refer to this interpretation by the Fund and the trustees as "the guidelines," and so do we.) Applying the guidelines, the Fund denied Williams's PSC request in January 1997. The reason for that denial was that the cities in which Williams had worked before did not have firefighters' retirement funds similar to Houston's.

Subsequently, the Legislature repealed article 6243e.2 and replaced it with article 6243e.2(1). Article 6243e.2(1), the current retirement statute, restated and amended former article 6243e.2, the former retirement statute, and continued in effect each firefighter's relief and retirement fund es-

**2.** Act of May 27, 1975, 64th Leg., R.S., ch. 432, § 30, 64 Tex. Gen. Laws 1135, 1148 [hereinafter "former TEX.REV.CIV. STAT. ANN. art. 6243e.2, section 30"], *repealed by*, Act of May 21, 1997, 75th Leg., R.S., ch. 1268, § 3, 75 Tex. Gen. Laws 4794, 4811 (current version at TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 16(a) (Vernon 2003)).

tablished under that article.[3] The PSC provision of the current retirement statute, section 16(a), provides:

> "A person who becomes a firefighter in a municipality to which this article applies may receive service credit *for prior employment with the fully paid fire department of another municipality in this state with a similar fund* benefitting only firefighters of that municipality to which the firefighter contributed if ... [the firefighter meets five requirements]." [4]

The Fund and the trustees interpreted the first sentence of former section 30(a) to mean what the italicized portion of current section 16(a) now expressly says.

### Williams I

■ That same year, Williams sued the Fund in district court, alleging statutory and constitutional claims and challenges to the Fund's guidelines and its PSC determination. On the Fund's motion,[5] the trial court dismissed all of Williams's claims against the Fund, without prejudice, for lack of subject matter jurisdiction—except (1) his constitutional claims and (2) his challenge that the Fund's ruling was barred by res judicata, claim preclusion, issue preclusion, waiver, estoppel, and collateral estoppel. Williams appealed the dismissal order. On interlocutory appeal, we affirmed, holding that the trial court had neither "appellate" [6] nor original jurisdiction to consider the dismissed claims until 2003, the earliest possible date Williams might be "eligible for retirement." *Williams v. Houston Firemen's Relief & Ret. Fund,* No. 01–98–00681–CV, slip op. at 5–14, 1999 WL 82441 (Tex.App.-Houston [1st Dist.] Feb. 11, 1999, no pet.) (op. on reh'g) (not designated for publication) (hereinafter "*Williams I* ").

### Williams II

Williams subsequently added the City and the four trustees, in their individual and official capacities, as defendants. He also added common law claims against all defendants. The Fund filed supplemental motions for traditional rule 166a(c) summary judgment; the trustees moved for 166a(c) summary judgment and incorporated the summary judgment grounds alleged by the Fund; the City moved to dismiss for lack of subject matter jurisdiction or, alternatively, for rule 166a(c) summary judgment; and Williams moved for rule 166a(c) partial summary judgment.[7]

3. Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), "Historical and Statutory Notes" (Vernon 2003).

4. Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 16(a) (Vernon Supp.2003) (emphasis added).

5. The Fund moved to dismiss Williams's claims for want of subject matter jurisdiction and, alternatively, for summary judgment against those claims on jurisdictional grounds as well as on the merits; the jurisdictional arguments under both the Fund's motions were identical. The trial court ruled on the dismissal grounds, rather than on those for summary judgment.

6. Technically, there is no appellate jurisdiction to review an agency determination on the merits, only a suit for judicial review of that

determination, which is an original proceeding in the trial court. *See Everett v. Tex. Educ. Agency, Div. of Teacher Records,* 860 S.W.2d 700, 703 (Tex.App.-Austin 1993, no writ), *disagreed with on other grounds, Nueces Canyon Consol. Indep. Sch. Dist. v. Cent. Educ. Agency,* 917 S.W.2d 773, 775–76 (Tex.1996). We use the term "judicial review," therefore, where Williams used the term "appellate."

7. The Fund filed one summary judgment/dismissal motion and three supplements; the trustees filed one summary judgment motion; and the City filed one summary judgment/dismissal motion. The final judgment recites that the trial court considered and granted each of these motions. We thus consider all grounds (except for the Fund's dismissal grounds, which we previously reviewed in the

By the time all summary judgment and dismissal motions were considered, Williams was asserting the following claims and challenges:

*Challenges to the Merits of the Guidelines and The Fund's and the Trustees' PSC Determination*

1. The Fund and the trustees misconstrued section 30 of the former retirement statute;

2. No or insufficient evidence supported the Fund and the trustees' PSC determination;

3. The Fund and the trustees' PSC determination was not supported by substantial evidence; and

4. The Fund's PSC determination was barred by res judicata, claim preclusion, issue preclusion, waiver, estoppel, and collateral estoppel.

*Constitutional Claims*

1. The Fund's guidelines and the trustees' application of them exceeded their statutory authority;

2. The former retirement statute unconstitutionally delegated governmental authority to the Fund;

3. The Fund's guidelines and the trustees' PSC determination were an unlawful and unconstitutional retroactive application of the law that adversely affected Williams's vested property right to PSC;

4. The Fund's guidelines and the trustees' application of them were an unconstitutional local or special law;

5. As applied, the guidelines denied Williams equal protection under the state constitution; and

6. The Fund's and the trustees' PSC determination violated substantive due process.

*Common Law Claims*[8]

1. The trustees and the City fraudulently concealed from Williams or misled him about his right to purchase PSC, which acts were also breaches of their fiduciary and good-faith-and-fair-dealing duties;

2. All defendants conspired to construe the PSC statute against Williams, to withhold material information from and mislead him (presumably about the right to purchase PSC), to breach their fiduciary and good-faith-and-fair-dealing duties to him, to conceal those breaches from him, and "to refuse to act in his best interests"; and

3. The above acts of "conspiracy" also constituted fraudulent misrepresentation, fraudulent concealment, and breaches of the defendants' fiduciary and good-faith-and-fair-dealing duties.

Williams sought compensatory and punitive damages, declaratory relief, pre- and post-judgment interest, attorney's fees, and costs.

The trial court granted the Fund's and the trustees' summary judgment motions; granted the City's motion to dismiss or, alternatively, for summary judgment; de-

---

interlocutory appeal) and evidence in support of each of those motions. The final judgment also recites that Williams's "motion for partial summary judgment" was denied. Williams actually filed four motions for partial summary judgment. Because Williams challenges their denial on appeal, we consider all grounds raised in all four of Williams's partial summary judgment motions.

**8.** Williams did not always clearly distinguish, either here or below, his summary judgment and appellate challenges asserted against the trustees individually from those asserted against them in their official capacities. However, given the nature of Williams's claims, we conclude that the only claims that could be asserted against the trustees individually are the common law claims.

nied Williams's motions for partial summary judgment; and rendered a take-nothing judgment against Williams. Williams appealed, asserting that the district court had subject matter jurisdiction over all his statutory, constitutional and common law claims under the retirement statute, the Texas Trust Code,[9] and its inherent constitutional powers; that the trustees and the City were not immune from his common law claims; that the Fund and the trustees were barred from changing their interpretation of the guidelines by res judicata, stare decisis, and collateral estoppel; and that he was entitled to judgment on the merits of his statutory, constitutional, and common law claims.

In our previous opinion in this appeal, we declined to revisit our holding in *Williams I* that the former retirement statute did not provide for review of the issues raised by Williams's suit. *Williams v. Houston Firemen's Relief and Ret. Fund*, No. 01–99–01361–CV, 2001 WL 1671349 (Tex.App.-Houston [1st Dist.] Dec. 27, 2001, no writ) (not designated for publication) (hereinafter *"Williams II"*). We again held that the retirement statute's express language permits judicial review of a member's challenges to the Fund's action only when the member is eligible for retirement or disabled. *See id.,* slip op. at 5–8. Since Williams was not then eligible for retirement, we held that his statutory claims were not ripe, despite his having exhausted his administrative remedies. Since ripeness is a prerequisite for justiciability, we further held that none of Williams's other claims—which derived from his statutory claims—were ripe. We therefore granted the Fund's jurisdictional plea, reformed the trial court's judgment to correspond to our ruling, and, as modified, affirmed. *See Williams II,* slip op. at

5–8, 12–14. Williams's and the Fund's and trustees' motions for rehearing followed.

### Rehearing

On rehearing, we withdraw our opinion of December 27, 2001 and issue this opinion in its stead. We hold that Williams has no statutory right to judicial review of his claims. However, Texas law recognizes a right to judicial review of administrative orders that violate a constitutional right. We hold that Williams has standing to raise his constitutional claims, but those claims are without merit. We further hold that the City is immune to Williams's Trust Code and common law claims under the doctrine of sovereign or governmental immunity and that the trustees are immune under the doctrine of official immunity. We reform the judgment to reflect dismissal of all claims over which the district court lacked jurisdiction and, as modified, affirm.

### STANDARDS OF REVIEW

We follow the usual standard of review for a summary judgment order that specifies no grounds, denies one party's rule 166a(c) motion, and grants the other parties' rule 166a(c) motions. *See* Tex.R. Civ. P. 166a(c); *Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). Summary judgment under rule 166a(c) is proper only when a movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if the evidence conclusively estab-

---

9. Specifically, Tex. Prop.Code Ann. § 115.001(a) (Vernon Supp.2003).

lishes all elements of an affirmative defense. *Id.*

When all parties move for summary judgment and the trial court grants some motions and denies others, we can consider all motions, their evidence, and their issues and may render the judgment that the trial court should have rendered. *See CU Lloyd's v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998). When an order granting summary judgment does not specify the grounds upon which the trial court ruled, we must affirm to the extent that any of the summary judgment grounds is meritorious. *See Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

To the extent the trial court dismissed Williams's claims for want of jurisdiction, we construe Williams's pleadings in his favor and look to his intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). We review the trial court's grant of a plea to the jurisdiction de novo. *Lukes v. Employees Ret. Sys. of Texas,* 59 S.W.3d 838, 841 (Tex.App.-Austin 2001, no pet.).

## SUMMARY JUDGMENT FOR THE FUND AND THE TRUSTEES

We first address Williams's jurisdictional issues, which we divide into two categories: (1) district court jurisdiction to review the Fund's decision and related

claims and (2) original district court jurisdiction over Williams's claims.

## *Judicial Review of Administrative Decisions*

### Statutory Right of Judicial Review

In *Williams I,* we held that the retirement statute did not authorize judicial review of the guidelines (*i.e.,* the Fund's interpretation of former retirement statute section 30) or of the trustees' decision to deny Williams's PSC request because Williams was not "disabled" or "eligible for retirement." *Id.,* slip op. at 5–14. We reaffirm that holding.

 The Fund's board is "in the nature of a public administrative body." *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 728 (Tex.App.-Corpus Christi 1994, writ denied). Texas law recognizes a right to judicial review of an administrative order only if (1) a statute provides the right, (2) the order adversely affects a vested property right, or (3) the order otherwise violates a constitutional right. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 599 (Tex.2001); *see also Cont'l Cas. Co. v. Functional Restoration,* 19 S.W.3d 393, 404 (Tex.2002).[10] We first consider the Fund's jurisdiction and then the statutory right of judicial review of Fund actions.[11]

---

**10.** A court may also review an administrative decision when the agency exercised authority beyond its statutorily conferred powers. *City of Sherman v. Pub. Utility Comm'n of Texas,* 643 S.W.2d 681, 683 (Tex.1983). We construe a claim that an agency has rendered an ultra vires decision as a claim that the agency has violated the constitutional separation of powers. *See Barshop v. Medina Underground Water Conservation Dist.,* 925 S.W.2d 618, 635 (Tex.1996).

**11.** Williams challenged the judicial review provisions of the former retirement statute, article 6243e.2. We consider the judicial re-

view provisions of the *current* retirement statute, article 6243e.2(1), because the judicial review provision of former article 6243e.2, section 17, is materially the same as the judicial review provisions in current article 6243e.2(1), sections 2(j) and 12(a). The general rule that statutory amendments are presumed not to apply retroactively does not apply when an amendment is merely procedural or remedial. *Reames v. Police Officers' Pension Bd. of City of Houston,* 928 S.W.2d 628, 631(Tex. App.-Houston [14th Dist.] 1996, no writ). "A remedial matter pertains to the practice and procedure by which substantive law is made." *Id.* Likewise, we consider the

The Fund's jurisdiction under both current article 6243e.2(1) and repealed article 6243e.2 is broad. The retirement statute expressly grants the managing board of the Fund the powers, *inter alia*, to:

(1) adopt for the administration of the fund written rules and guidelines not inconsistent with this article;

(2) interpret and construe this article and any summary plan descriptions or benefits procedures, except that each construction must meet any qualification requirements established under section 401 of the [Internal Revenue Code].

(3) correct any defect, supply any omission, and reconcile any inconsistency that appears in this article in a manner and to the extent that the board considers expedient to administer this article for the greatest benefit of all members;

. . .

(5) determine all questions, whether legal or factual, relating to eligibility for participation, service, or benefits or relating to the administration of the fund to promote the uniform administration of the fund for the benefit of all members . . . .

Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 2(p)(1)-(3), (5) (Vernon 2003) (previously former Tex.Rev.Civ. Stat. Ann. art. 6243e.2, § 2(j)(5)).

▮▮▮ The Fund claims that it had exclusive jurisdiction over Williams's claims. We agree. An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 221 (Tex.

2002) (quoting Andrew G. Humphrey, Comment, *Antitrust Jurisdiction & Remedies in an Electric Utility Price Squeeze,* 52 U. Chi. L.R. 1090, 1107 n. 73 (1985)). "[U]nder the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the sole authority to make an initial determination in a dispute." *Id.* Article 6243e.2(1), like its predecessor, is a "pervasive regulatory scheme," governing the establishment and administration of a "Firefighters' relief and retirement fund in municipalities of at least 1,600,000 population." Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1). Both Williams's cause of action and its remedy derive from the statute. When, as here, a cause of action and remedy for its enforcement are derived from statute, the statutory provisions for review are mandatory and exclusive. *See id.* at 221–22. If an agency has exclusive jurisdiction over a matter, the courts lack subject matter jurisdiction until administrative remedies are exhausted and must dismiss the claims within the agency's exclusive jurisdiction. *Id.* at 221. When exhaustion is required, courts have only limited review of the administrative action. *Id.* That is the case here.

The retirement statute provides for judicial review of Fund decisions as follows:

Sec. 2 . . . . (j) Each decision of the [Fund's] board in a matter under the board's jurisdiction is final and binding as to each affected firefighter, member, and beneficiary, subject only to the rights of appeal specified by this article.

. . .

### Appeals of benefit decisions

Sec. 12. (a) A member who is eligible for retirement for length of service or disability or who has a claim for tempo-

---

jurisdictional provisions of the current retirement statute because the language of the statute regarding the jurisdiction of the Fund is

materially the same under section 2(j) of former article 6243e.2 and section 2(p) of the current article.

rary disability, or any of the member's beneficiaries, who is aggrieved by a decision or order of the [Fund's] board, whether on the basis of rejection of a claim or of the amount allowed, may appeal from the decision or order of the board to a district court in the county in which the board is located by giving written notice of the intention to appeal. . . .

*Id.* §§ 2(j), 12(a) (Vernon 2003).[12]

Williams reads section 2(j) to allow judicial review of any board decision, presumably because the decision is "final," concluding that section 12(a) merely specifies procedures for review of Fund decisions for two non-exclusive classes of appellants (those eligible for retirement or with temporary disability). Williams also argues that section 12(c)—which allows the court to consider evidence not in the administrative record—implies a right of immediate judicial review, because evidence could be lost in the years between the denial of a firefighter's service credit request and his retirement. *See id.* § 12(c) (Vernon Supp. 2003). The Fund reads section 12(a) as the only provision providing for judicial review. Accordingly, the Fund argues that Williams may not challenge its credit

decision until at least 2003, the earliest possible date he would be "eligible for retirement," as described in section 12(a).[13]

While section 2(j) makes the board's decisions final, it expressly makes those decisions "subject only to the rights of appeal specified by this article." *Id.* § 2(j). Section 2(j) does not expressly authorize appeals. Additionally, not every final administrative decision is reviewable by a court. *See, e.g., Harris v. Civil Serv. Comm'n for Mun. Employees of the City of Houston,* 803 S.W.2d 729, 730 (Tex.App.-Houston [14th Dist.] 1990, no writ); *Pruitt v. City of Houston,* 548 S.W.2d 90, 93 (Tex.Civ. App.-Houston [1st Dist.] 1977, no writ).

■ We agree with the Fund that, under the plain language of the Act, the only section allowing a right of judicial review is section 12(a), which limits the statutory right of appeal of Fund decisions to aggrieved "members" who are "eligible for retirement" for length of service or disability or have a claim for temporary disability and any of these members' beneficiaries. Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 12(a). Moreover, as indicated by the caption of section 12 ("Appeals of benefit decisions") and by the plain language of that section, the statutory right of judicial

---

12. The provisions for appeal in the current statute, sections 2(j) and 12(a), do not differ materially from the provision for appeal in the former statute, which was applicable when Williams's claims arose, namely section 17:

> Sec. 17. (a) Any member possessing the qualifications required for retirement for length of service or disability or having claim for temporary disability, or any of his beneficiaries, who deems himself aggrieved by the decision or order of the board of trustees, whether because of rejection or the amount allowed, may appeal from the decision or order of the board to a district court in the county where the board is located by giving written notice of the intention to appeal. The notice shall contain a statement of the

intention to appeal, together with a brief statement of the grounds and reasons why the party feels aggrieved. . . .

Act of May 27, 1975, 64th Leg., R.S., ch. 432, § 17, 1975 Tex. Gen. Laws 1135, 1145, *repealed by* Act of May 21, 1997, 75th Leg., R.S., ch. 1268, § 3, 1997 Tex. Gen. Laws 4794, 4811 (current version at Tex.Rev.Civ. Stat Ann. art. 6243e.2(1), §§ 2(j), 12(a) (Vernon 2003)).

13. If Williams's interpretation of former section 30 were to apply, he would be eligible to retire in 2003. *See* Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 4(a) (Vernon Supp.2003). If the Fund's interpretation were correct, Williams would not be eligible to retire until 2010. *See id.*

review of Fund decisions is further limited to review of benefit decisions regarding the "rejection of a claim or of the amount allowed." *Id.* Article 6243e.2(1) on its face does not allow judicial review of the Fund's credit determination until Williams meets section 12(a)'s requirements. The fact that evidence might be lost, as Williams contends, does not change the text of the statutes.

Accordingly, we overrule Williams's jurisdictional issue to the extent he argues that the district court had jurisdiction under the retirement statute to review the Fund's and trustees' decisions. We turn next to whether the Fund's action is beyond its statutorily conferred powers, deprives Williams of vested rights, or otherwise violates a constitutional provision and is thus subject to judicial review in the absence of a statutory right of review. *See Little–Tex,* 39 S.W.3d at 599; *City of Sherman v. Pub. Utility Comm'n of Texas,* 643 S.W.2d 681, 686 (Tex.1983).

**Right of Judicial Review of Constitutional Issues**

Williams contends that (1) the Fund's actions were beyond their constitutional authority; (2) the Legislature unconstitutionally delegated governmental authority to the Fund; (3) the Fund's guidelines and PSC determinations were unconstitutional retroactive applications of the law; (4) the Fund's guidelines were an unconstitutional local or special law; (5) the Fund's guidelines and their application denied him equal protection; and (6) the Fund's and the trustees' application of the Fund's guidelines to him violated substantive due process.

■■■ Standing to challenge the constitutionality of a statute requires that the plaintiff must have suffered some actual or threatened injury under the statute and

that he contend that the statute unconstitutionally restricts his own rights. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 626 (Tex.1996). Williams has pleaded that his rights have been unconstitutionally restricted and that he has been injured by the Fund's promulgation of its guidelines and by its PSC determination.

■■■ We hold that Williams has standing to bring his constitutional claims. We turn, therefore, to the merits of those claims.

*Ultra Vires Administrative Decisions*

■■■ Williams argues that the trial court has jurisdiction because the trustees acted ultra vires in establishing the guidelines for interpreting the retirement statute. Courts generally do not interfere in an administrative agency's duties and functions, but they will intervene and give declaratory relief when the agency exercises authority beyond its statutorily conferred powers. *Nuchia v. Woodruff,* 956 S.W.2d 612, 616 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *see City of Sherman,* 643 S.W.2d at 683; *see also Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158, 160 (1961).

Williams alleges that the Fund "misconstrued" and "adopted rules inconsistent with and in violation of" the former retirement statute's section 30. Specifically, he complains that the Fund *improperly construed* former section 30 to mean that, in order to receive retirement credit, the cities from which he transferred had to have statutory firemen's retirement funds. Williams argues that (1) the former retirement statute gave the trustees authority to construe the statute only for the "benefit of all members";[14] (2) the guidelines

14. As noted above, the former and current retirement statutes provide that the Fund's

harmed Williams and did not benefit any other fund member; (3) the guidelines thus could not have been for the "benefit of all members"; and (4) the trustees, therefore, acted outside their statutory authority.

Article 6243e.2(1) (like its predecessor) clearly gives the Fund the power to adopt written rules and guidelines; to construe the retirement statute; to correct defects, supply omissions, and reconcile inconsistencies; and to determine all questions relating to eligibility for participation, service, benefits, and administration of the Fund. TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p)(1), (2), (3), (5). In this appeal, Williams does not challenge the fact that the Fund has, and has had, this statutory authority. Regardless of his phrasing it in terms of "authority" to interpret at all, the crux of Williams's argument is that the trustees interpreted the statute in a way they should not have.[15] This is a complaint of "getting it wrong," not of acting outside statutory authority. *See Tex. Educ. Agency v. Cypress–Fairbanks Indep. Sch. Dist.*, 830 S.W.2d 88, 90–91 (Tex.1992); *Tex. Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex.App.-Austin 1997, no writ);[16] *N. Alamo Water Supply Corp. v. Tex. Dep't of Health*, 839 S.W.2d 455, 458–59 (Tex.App.-Austin 1992, writ denied).

We hold that Williams's summary judgment motion neither alleged nor proved a true ultra vires ground. Accordingly, that ground could not fit within the ultra vires exception to the rule that no right of judicial review of an agency decision lies absent statutory authority. We overrule Williams's ultra vires challenge.

### Delegation of Governmental Authority

Williams's claim that the retirement statute unconstitutionally delegates governmental power to the Fund likewise collapses, as briefed, into an argument about the Fund's interpretation of the statute, which is clearly within the Fund's jurisdiction. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p)(2) (conferring jurisdiction on the Fund to "interpret and construe this article"). Accordingly, we overrule this issue. *See* TEX.R.APP. P. 38.1(h) (brief must contain clear and concise argument for contention, with citations to authority).

### Retroactive Application of Statute

Williams also contends that the Fund's and the trustees' interpretation of the retirement statute denying him PSC credit represents an illegal and unconstitutional retroactive application of law. The Fund construed the PSC provision of the firefighter's retirement-fund statute while Williams's request for PSC was pending;

---

board has the power to *"correct any defect, supply any omission, and reconcile any inconsistency* that may appear in this [Act] in a manner and to the extent that the board considers expedient *to administer this [Act] for the greatest benefit of all members."* Former TEX.REV.CIV. STAT. ANN. art. 6243e.2, § 2(j)(3) (now appearing at TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p)(3) (Vernon 2003)) (emphasis added).

15. Williams's petition alleged that "the Fund misconstrued ... [and] ... adopted and applied rules inconsistent with and in violation of [the article]," and the crux of his argu-

ments here and below was that the Fund misconstrued the article.

16. "The foregoing impediments to declaratory relief are not avoided by a claim that the opinion given by the Commission's general counsel and director of enforcement is ultra vires. They had the undoubted authority to interpret the Act's provisions and to make a decision in that regard. That they 'might decide 'wrongly' ... does not vitiate' their authority to make a decision." *Id.* at 292 (quoting *N. Alamo Water Supply Corp. v. Tex. Dep't of Health*, 839 S.W.2d 455, 459 (Tex. App.-Austin 1992, writ denied)).

the Legislature subsequently repealed article 6243e.2, under which Williams's claims were brought, and which he contends supports his interpretation of his right to PSC, and replaced the repealed statute with article 6243e.2(1), which codifies the Fund's interpretation of the PSC provision.

▇▇▇▇ The Texas Constitution provides, "No ... retroactive law ... shall be made." TEX. CONST. art. I, § 16. This constitutional proscription is, however, limited to "vested rights." *See Subaru*, 84 S.W.3d at 219; *City of Dallas v. Trammell*, 129 Tex. 150, 101 S.W.2d 1009, 1014 (1937). If a statute impairs or takes away vested rights, it may not be made retroactive. TEX. CONST. art. I, § 16; *Merchants Fast Motor Lines, Inc. v. Railroad Comm'n*, 573 S.W.2d 502, 504 (Tex.1978); *Reames v. Police Officers' Pension Bd. of City of Houston*, 928 S.W.2d 628, 631(Tex. App.-Houston [14th Dist.] 1996, no writ). Retroactive laws affecting vested rights that are legally recognized or secured are invalid under Texas law. *Barshop*, 925 S.W.2d at 633. However, no one has a vested right merely in the continuance of present law in relation to a particular subject; the Legislature may change laws so long as they do not destroy or prevent the adequate enforcement of vested rights. *Subaru*, 84 S.W.3d at 219.

▇▇▇▇ Williams claims that the Fund (1) incorrectly interpreted former article 6243e.2's PSC requirements and then (2) retroactively applied that incorrect interpretation (which was subsequently codified in article 6243e.2(1)). However, Williams had no vested right to a certain interpretation of the retirement statute, nor did he have a vested right to receive PSC under the terms of former article 6243e.2. There was no constitutional bar to the Fund's promulgating guidelines for construing the retirement statute while Williams's request for PSC was pending and applying that interpretation to Williams's claim for PSC; nor is there a constitutional bar to applying the PSC provisions of current article 6243e.2(1) retroactively to Williams's claims, since he had no vested right to receive benefits under the (now repealed) retirement statute when he filed his claim.

▇▇▇▇ It is well-established that "an employee who elects to participate in a statutory pension plan does so 'in contemplation of the reserved right of the Legislature to amend or to repeal laws on which the pension systems are founded.'" *Reames*, 928 S.W.2d at 631–32 (quoting *Trammell*, 101 S.W.2d at 1012); *Duckett v. Board of Trustees, City of Houston Firemen's Relief & Retirement Fund*, 832 S.W.2d 438, 442 (Tex.App.-Houston [1st Dist.] 1992, writ denied). A participant in a statutory pension plan does not have a vested right to receive currently unvested benefits; he has merely an expectancy based on the anticipated continuance of existing law; and this expectancy is subordinate to the right of the Legislature to abolish the pension system or to diminish the benefits of pensioners thereunder. *Trammell*, 101 S.W.2d at 1014–16; *see also Ex parte Abell*, 613 S.W.2d 255, 261–62 (Tex.1981); *Bd. of Managers of the Harris County Hosp. Dist. v. Pension Bd.*, 449 S.W.2d 33, 37 (Tex.1969).[17]

Williams's claim that the Fund and the trustees violated the constitution by applying the guidelines for interpreting the re-

---

**17.** We specifically note that article 6243e.2(1) makes no reference to vested benefits and has no provision for the non-forfeiture of retire-

ment benefits after a statutorily specified term of service.

tirement statute retroactively is without merit.

We overrule this issue.

### Special or Local Law

Williams's claim that the former retirement statute is an unconstitutional special or local law collapses into a complaint about the Fund's statutory construction in denying him PSC, which, like his claim of unconstitutional delegation of governmental authority, is a matter clearly within the Fund's jurisdiction. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p)(1), (2), (3), (5). However, even if properly presented, this claim is without merit.

The Texas Constitution prohibits the Texas Legislature from passing "any local or special law...[r]egulating the affairs of counties, cities, towns, wards or school districts." TEX. CONST. art. III, § 56. A special law is, as Williams states, a law limited to a particular class of persons distinguished by some characteristic other than geography, while a local law is one limited to a specific geographic area of the state. *Maple Run v. Monaghan*, 931 S.W.2d 941, 945 (Tex.1996). " 'The primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class.' " *Maple Run*, 931 S.W.2d at 945 (quoting *Rodriguez v. Gonzales*, 148 Tex. 537, 227 S.W.2d 791, 793 (1950)).

Former article 6243e.2, under which Williams brings his claims, is, like its successor, article 6243e.2(1), one of a group of statutes promulgated pursuant to article 16, section 67 of the Texas Constitution, which confers power on the Texas Legislature to "enact general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers." TEX. CONST. art. 16, § 67. The classification made by the statute at issue in this case, providing for the establishment and administration of a "Firefighters' relief and retirement fund in municipalities of at least 1,600,000 population," as stated in its caption, is reasonable in light of the series of statutes that make similar provision for firefighters in the other population centers of the state, and it operates equally on all members of the Fund in the same position. It is thus a constitutional general law, not an unconstitutional special law, as Williams contends. *See Bd. of Managers of Harris County Hosp. Dist.*, 449 S.W.2d at 38 (act "relating to Municipal pension systems in all cities of this state having a population in excess of nine hundred thousand (900,-000) inhabitants" was not unconstitutional local or special law, despite applying only to Houston when passed).

We overrule this issue.

### Equal Protection

Williams also challenges the provisions for appeal of the retirement statute on equal protection grounds. In his petition, he argues that the statute violates the federal Equal Protection Clause [18] because

> [u]nder the statute, each firefighter's right to appeal is dependent on when he will be "eligible for retirement." Consequently, some firefighters will be able to appeal the *same final decision*, made at the *same time*, by the *same adjudicator* many years before Williams could appeal that same final decision. There is no legitimate state interest that is furthered by classifying persons in a manner that gives some the right to appeal months or even years before others could appeal the *same final* decision en-

---

**18.** *See* U.S. CONST. amend. XIV.

tered on the *same day* by the *same adjudicator.*

(Emphasis in original; citations omitted.); *see Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972) ("When an appeal is afforded . . . it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause.").

 Williams's argument is without merit. It fails to recognize the rational distinction between (1) a statutory grant of the right of judicial review of agency decisions regarding claims for vested benefits and (2) a statutory denial of the right of appeal to persons who have no vested interest in receiving benefits. When, as here, "the classification does not impinge on a fundamental right, or distinguish between persons on a suspect basis such as race or national origin, it is valid as long as it is rationally related to a legitimate state purpose." *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 451 (Tex.2000). *See Owens Corning v. Carter,* 997 S.W.2d 560, 581 (Tex.1999) ("[W]e must uphold the law if we can conceive of any rational basis for the Legislature's action.").

 Deferring judicial review until a firefighter actually seeks retirement benefits prevents review that may be merely advisory or dependent upon future contingencies. *See Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.,* 971 S.W.2d 439, 442, 443 (Tex.1998) (holding that ripeness is threshold issue that implicates subject matter jurisdiction; it emphasizes need for concrete injury for presentation of justiciable claim; and case is not ripe when its resolution depends on contingent or hypothetical facts or on events that have not yet come to pass); *Duckett,* 832 S.W.2d at 442 (holding that inchoate interest of beneficiary of Firemen's Relief and Retirement Fund does

not ripen into property interest until occurrence of contingency upon which that interest depends). This is a rational basis to uphold the law.

We overrule this issue.

### Substantive Due Process

 Williams further contends that "[s]ubstantive due process proscribes arbitrary or capricious laws that adversely affect *vested* rights." *See City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788, 791 (1951) (holding that, for plaintiff to bring himself within protection of due process claims, right adversely affected by action of administrative body must be vested property right). Because we have held that, at the time he brought his claims, Williams had no vested right to the contested pension benefits under the retirement statute, his substantive due process argument necessarily fails.

We overrule this issue.

### Inherent Right of Judicial Review of Legal Issues

The dissent would hold that the district court had inherent jurisdiction under article V, section eight of the Texas Constitution to interpret "pure questions of law" relative to the retirement statute, regardless of the Fund's jurisdiction over legal questions. It invokes the constitutional grant of original jurisdiction to the district courts to determine questions of law, *"except . . . where exclusive . . . jurisdiction may be conferred by* this Constitution or other *law on some* other court, tribunal, or *administrative body."* TEX. CONST. art. V, § 8 (emphasis added).

 The dissent would hold that the retirement statute did *not* give the Fund exclusive jurisdiction to interpret the retirement statute because the statute did not include the term "exclusive"; therefore, the district court retained jurisdiction

over the legal questions Williams raises. To reach this conclusion, however, the dissent must ignore the comprehensive statutory scheme from which all of Williams's rights derive, including the broad legislative grant of powers to the Fund to interpret and to construe the statute; the broad grant of power to the Fund to determine all legal and factual questions relating to eligibility for participation, service, and benefits or relating to the administration of the Fund; and the legislative limitation on the statutory right of review of Fund determinations. The dissent also ignores the purpose of the exclusive jurisdiction doctrine, which is to require an aggrieved party to comply with statutory provisions before the jurisdiction of the trial court attaches and to limit review of administrative action. *Subaru*, 84 S.W.3d at 221. It is undisputed that Williams *did* exhaust his administrative remedies; therefore, the real question here is the scope of the right to seek judicial review of administrative decisions once administrative remedies have been exhausted.

The dissent's expansive view of the inherent jurisdiction of district courts to review agency actions, even in the absence of a statutory right of review or a constitutional question, eviscerates the doctrine of exclusive agency jurisdiction and the power of the Legislature to limit statutory review of administrative decisions. Even if an agency's jurisdiction expressly includes the interpretation of legal and factual issues, as here, persons aggrieved by agency action and lacking a statutory right of review could always perform an end run around the agency by asserting the inherent jurisdiction of the judicial system to interpret the law. This is not the law.

*See, e.g., Continental Cas. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 404 (Tex.2000) (holding that, when Legislature remains silent or denies right of judicial review, administrative decisions may nevertheless be attacked in court *if* they adversely affect vested property right or otherwise violate provision of state or federal constitution); *Little–Tex*, 39 S.W.3d at 599.[19]

The potential impact of the dissent's expansive interpretation of district court jurisdiction over questions of law becomes evident when the dissent asserts the authority of the district court to reinstate and to interpret *repealed* law in a way that contradicts the agency interpretation of that law, contradicts current law, and supports Williams's claims. By permitting the court (under the canon of inherent jurisdiction) not only to second guess an administrative agency on matters within the agency's express jurisdiction, and as to which the governing statute expressly precludes judicial review by persons with non-vested rights, the dissent would allow a participant in a statutory pension plan to freeze non-vested rights in time and to subject them to judicial enforcement. This view is contrary to long-established principles of law that subject the expectations of statutory pension plan participants to the right of the Legislature to repeal or amend the law and to decrease or eliminate non-vested benefits. *See Trammell*, 101 S.W.2d at 1014–16. Even more fundamentally, the dissent would place the district courts in the untenable position of second-guessing the Fund's exercise of its statutorily conferred power to construe the statute and to promulgate guidelines without

19. The dissent faults us for ignoring *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000). *Kazi* holds that the district courts are presumed to have subject matter jurisdiction unless a showing can be made to the contrary. *Id.* at 74–75. Our discussion of the jurisdictional issues in this case is directed precisely at showing why the district courts do or do not have subject matter jurisdiction over Williams's claims.

the benefit of either the Fund's expertise or its knowledge of how the construction of one section of the retirement statute impacts the administration of the Fund for the "greatest benefit of all members." *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p)(3), (5).

We, therefore, disagree with the dissent's view that the district courts have inherent jurisdiction over questions of law within the Fund's jurisdiction to decide in the absence of a statutory right of review or a constitutional issue.

### *Original District Court Jurisdiction*

### District Court Jurisdiction over Williams's Claims Under the Texas Trust Code

■ Williams also argues that section 115.001(a) of the Texas Trust Code confers both original and exclusive jurisdiction on the district courts "to decide all issues concerning the [pension] Fund:

> Except as provided by [a sub-section inapplicable here], a district court has original and exclusive jurisdiction over all proceedings concerning trusts, including proceedings to: (1) construe a trust instrument...."

TEX. PROP.CODE ANN. § 115.001(a)(1) (Vernon Supp.2003). He correctly observes that the Trust Code applies generally to a pension trust. *See id.* § 121.003 (Vernon 1995); *see also id.,* § 121.001(a) (Vernon 1995) (defining a pension trust). The Fund and the trustees respond that section 115.001(a) cannot create subject matter jurisdiction over Williams's claims because that section "contains merely a general grant of jurisdiction for actions involving trusts [but not] ... language suggesting a legislative intent to waive sovereign immunity for public pension funds." Assuming without deciding that

the Trust Code applies to Williams's claims, we agree with the Fund.

■ "Absent specific legislative authorization, persons aggrieved by an administrative agency's action have no recourse in the courts due to the first principle of governmental immunity—the state as sovereign cannot be sued without its permission. The doctrine bars a suit for judicial review against the state unless the state has expressly given its consent to be sued." *Southwest Airlines Co. v. Tex. High–Speed Rail Auth.,* 867 S.W.2d 154, 157 (Tex.App.-Austin 1993, writ denied) (citations omitted). Waiver of sovereign immunity from suit must be clear and unambiguous. *See, e.g., Fed. Sign v. Texas S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997). The general language of section 115.001(a) of the Trust Code does not provide the necessary waiver of sovereign immunity from suit.

We overrule this issue.

### District Court Jurisdiction over Williams's Common Law Claims

Finally, Williams argues that he is entitled to bring common law claims against the trustees for conspiracy, fraud, breach of fiduciary duty and breach of the duty of good faith and fair dealing arising in connection with their interpretation and application of the retirement statute. The trustees respond that they are immune from such claims.[20]

■ Governmental immunity from suit bars an action against the state unless the state expressly consents to the suit. *Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). A party suing a governmental entity must establish the state's consent, by reference either to a statute or to express legislative permission. *Id.* Absent such consent, a trial court lacks sub-

---

20. Williams abandoned his common law claims against the Fund.

ject matter jurisdiction. *Id.* Here, there was no consent to suit by the state. Therefore, the district court lacked subject matter jurisdiction over Williams's common law claims against the Fund, a state agency. Public officials, however, enjoy more limited immunity.

Public officials are entitled to official immunity from personal liability in performing (1) discretionary duties (2) in good faith (3) within the scope of their authority. *Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex.1994). If public officials are immune from suit, they are not personally liable to the claimant under Texas law. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994). The rationale for official immunity is that the public suffers if government officers, who must exercise judgment and discretion in their jobs, are subject to civil lawsuits that second-guess their decisions. *Id.* " 'If an action involves personal deliberation, decision and judgment, it is discretionary.' " *Kassen,* 887 S.W.2d at 9 (quoting *City of Lancaster,* 883 S.W.2d at 654).

The trustees' interpretation of the retirement statute, their promulgation of guidelines, their administration of the Fund, and their denial of Williams's claim for PSC—the actions that Williams alleges give rise to his common law claims—are all acts requiring deliberation, decision, and judgment within the scope of the trustees' authority under the retirement statute. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), §§ 2(j), 2(p), 12(a). The only question, therefore, is whether the trustees' exercise of discretion was made in "good faith."

The test for good faith is one of objective legal reasonableness, without regard to whether the government official acted with subjective good faith. *City of Lancaster,* 883 S.W.2d at 656. To determine objective legal reasonableness, the courts "look to whether a reasonable offi-

cial could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* Good faith immunity applies even if the official misinterprets or violates the law or incorrectly adjudicates a claim. *See Campbell v. Jones,* 153 Tex. 101, 264 S.W.2d 425, 427 (1954).

Williams's argument that the trustees did not act in good faith derives solely from his contentions that the trustees misconstrued the statute and that "no reasonable person could have believed it was lawful to deny Williams PSC for the reason he was denied PSC, or that it was reasonable to misleadingly tell him he could not transfer PSC." The trustees testified by affidavit that they believed their conduct to be lawful in light of the powers conferred on them by the retirement statute to adopt guidelines for the administration of the fund, "to participate in the Board's exercise of its functions, which include administering the Fund, construing the act, and determining all questions relating to eligibility for participation," and to "participate in the Board's adjudication of the prior service credit application." This belief was clearly reasonable, given the jurisdiction expressly conveyed to the board by statute. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2, §§ 2(j), 2(p)(1), (2), (3), (5). Therefore, the trustees are entitled to official immunity.

The dissent, by contrast, would hold that, to prove the objective "good faith" element of official immunity, the trustees had to prove that the thought processes underlying their interpretation of the statute were "objectively reasonable," given "Williams's allegations that the trustees had purposefully changed their interpretation for the sole and improper purpose of defeating pending PSC requests." The

dissent would thus make statutory appointees vested with the power of interpreting and administering statutes *personally liable* for getting the interpretation wrong unless they prove that their motives are pure.

The dissent misconstrues the standard of proof of objective good faith, namely, "whether a reasonable official could have believed his or her conduct to be lawful." *City of Lancaster*, 883 S.W.2d at 656. The officials' affidavits conform exactly to the standard of proof. Instead, the dissent would place a burden on officials to publicly justify their reasoning that can be nothing other than a public confession of the officials' thought processes, establishing a *subjective* standard of proof of good faith that has been expressly rejected by the Texas Supreme Court. *Id.* Such a standard would also undermine the rationale for official immunity, *i.e.*, that the public suffers if government officers whose duties include exercising judgment and discretion are subjected to civil lawsuits that second-guess their decisions. *Id.* at 658. We therefore disagree with the dissent's analysis of this issue.

▮▮▮▮ We hold that the trustees are entitled to official immunity with respect to Williams's common law claims against them. We overrule this issue.[21]

## SUMMARY JUDGMENT FOR THE CITY

Williams asserted only his common law claims (conspiracy, fiduciary-duty breach, good-faith-and-fair-dealing breach, and fraudulent misrepresentation and concealment) against the City, two of whose employees are designated by the retirement statute to sit on the Fund's board. The trial court granted the City's motion to dismiss or, alternatively, for rule 166a(c) summary judgment on those claims.

▮▮▮▮ A municipality, as a political subdivision of the state, is not liable for the acts of its officers or employees committed in the course of performing governmental functions unless the municipality's common law immunity is waived by the Texas Tort Claims Act ("TTCA").[22] *City of Lancaster*, 883 S.W.2d at 658. The relevant provision of the TTCA waives the sovereign immunity of municipalities for governmen-

---

**21.** The Fund and the trustees also argue for the first time on appeal that the alleged res judicata effect of our holding in *Williams I* deprived the trial court of jurisdiction over Williams's challenges to the adoption of the guidelines and the PSC determination. First, res judicata is an affirmative defense on the merits, not a jurisdictional bar. *See Int'l Bank of Commerce of Laredo v. City of Laredo*, 608 S.W.2d 267, 269 (Tex.Civ.App.-San Antonio 1980, writ dismissed). Second, an interlocutory judgment in the same suit cannot have a res judicata effect because such a judgment is not final. *See Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 595 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Williams also argues that the Fund is prevented by *stare decisis* or is collaterally estopped from denying his claim for PSC because of a prior district court decision, *Holleman v. Houston Firemen's Relief and Retirement Fund*, Cause No. 92–28684, in the 80th Judicial District

Court of Harris County. First, we are not bound by district court decisions. Second, collateral estoppel, or issue preclusion, prevents the relitigation of particular issues when "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). The district court in *Holleman* did not interpret the retirement statute applicable to Williams's claims or determine Williams's eligibility for PSC, and neither the parties nor the issues are the same here; collateral estoppel does not apply.

**22.** *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109 (Vernon 1997 & Supp.2003).

tal functions only as to (1) "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment" if (2) the damage, injury, or death arises from the operation or use of a motor vehicle or motor-driven equipment and (3) "the employee would be personally liable to the claimant according to Texas law." *Id.* § 101.021 (Vernon Supp.2003). The TTCA does not waive the City's immunity to the type of common law claims asserted by Williams. *See Thayer v. Houston Mun. Employees Pension Sys.*, 95 S.W.3d 573, 576–77 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that municipal pension system and board, as state-created governmental entities, are generally immune from tort liability). Therefore, the City is immune from judgment on Williams's common law claims, assuming that those claims challenge its governmental functions.

Governmental functions of a municipality are those that are "enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. . . ." TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon Supp.2003). Williams concedes in his petition that the provision under which he seeks PSC was created by statute, specifically former article 6243e.2, which he acknowledges was superseded by article 6243e.2(1) in November 1997. He further acknowledges that, although the Fund is independent of both the City and the Houston Fire Department, its governing board of trustees, by statute, includes the City's mayor or his representative and the City's treasurer; that the amount of contributions from members and from the City financing the Fund is mandated by statute; and that the terms under which firefighters' pensions vest and PSC is de-termined are likewise mandated by statute. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), §§ 2(b)(1), (2); 4; 13(c), (d); 16. The retirement statute, in turn, is promulgated pursuant to the Texas Constitution. TEX. CONST. art. XVI, § 67(a) (providing for the enactment of "general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers").

■ The administration of the Fund and the promulgation and interpretation of the guidelines for its administration are thus expressly "enjoined" on the City by statute; and these powers are given to the Fund as part of the sovereignty of the state, by legislative authority, to be exercised by the board of trustees and the City for the general benefit of all who fall within the scope of the statute. They are thus governmental functions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a). The City is, therefore, entitled to governmental immunity from suit on Williams's common law claims.

■ Williams, however, argues that the actions he complains about are proprietary functions of the City, rather than governmental functions. *See Herschbach,* 883 S.W.2d at 730 ("An exception to the general rule of governmental immunity is that a municipality is not immune from its proprietary functions."). Proprietary functions are those "that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(b) (Vernon Supp.2003). Williams cites to cases which he contends support his argument that the interpretation and administration of a statutorily created pension fund are proprietary functions of the City, for which the City and those trustees who are City employees are not immune, namely, *Herschbach* and *City*

*of Dallas v. Arnett,* 762 S.W.2d 942 (Tex. App.-Dallas 1989, writ denied).[23]

In *Arnett,* the Dallas Court of Appeals addressed the question of whether the operation of a police and fire fighter's pension fund was a governmental or proprietary function of the municipality. *See id.,* 762 S.W.2d 942. Analogizing from the provision of health insurance to municipal employees, the court held that the provision of pension benefits was a proprietary function. *Id.* at 953. We believe that *Arnett* was wrongly decided for two reasons. First, the court based its conclusion on "the closely analogous function of providing health insurance to municipal employees" by a self-insured municipality, which the Texas Supreme Court had designated a proprietary function in *Gates v. City of Dallas,* 704 S.W.2d 737, 739 (Tex. 1986). *Arnett,* 762 S.W.2d at 953. In the context of indicia of proprietary versus governmental functions, the analogy drawn in *Arnett* is false. There is no statutory "enjoinder" that a self-insured municipality provide health benefits to municipal employees, while there is an express statutory obligation under article 6243e.2(1) for the City to manage the Fund for the benefit of firefighters. *See* Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), §§ 2(p) 3, 5. Second, although the *Arnett* court recognized that "a number of administrative and financial interconnections exist between the City and the Fund" under the governing statute, article 6243a, the court failed to consider the statutory origins of the city's power to administer the fund and thus failed to address either governmental immunity in general or the TTCA's limited waiver of immunity.

In *Herschbach,* the Corpus Christi Court of Appeals wrestled with the issue of whether the City of Corpus Christi's calculation of the average monthly salary of firefighters was a governmental function or a proprietary function subject to tort and breach-of-contract claims. *See id.,* 883 S.W.2d 720. The court observed that section 10A–3 of the relevant statute, article 6243e, was *optional* in its coverage (it applied to all cities "which *adopt* the provisions of this section"). *Id.* at 731 (emphasis added). Based on that conclusion, the court held that "the state did not *enjoin* section 10A–3 upon the City; [the statutory language] lacks the elements of command necessary for enjoining a function on a municipality." *Id.* at 731.

Article 6243e.2(1) is distinguishable from the statute at issue in *Herschbach* in that article 6243e.2(1) has no optionality provision. Nevertheless, we disagree with the holdings in *Arnett* and *Herschbach* that a municipality's exercise of statutorily prescribed functions with respect to a statutory pension plan is a propriety function of the municipality. Such a construction not only contradicts the definition of governmental functions, but is absurd when (1) the result is to hold a municipality liable in tort for the *exact same acts* of statutory interpretation and administration for which the statutorily created board in which it participates in interpreting and administering a statutorily created pension fund under the *exact same statute* enjoys sovereign immunity and (2) a further result is to hold two of the members of a statutorily created board personally liable in tort for the *exact same actions* in their statutorily enjoined capacity as the mu-

---

**23.** Williams also cites *Muzquiz v. City of San Antonio,* 520 F.2d 993 (5th Cir.1975), and *Bolen v. Board of Firemen, Policemen, and Fire Alarm Operators' Trustees,* 308 S.W.2d 904 (Tex.Civ.App.-San Antonio 1958, writ ref'd). Neither of these cases addresses the proprietary functions of municipalities.

nicipality's representatives on the board of trustees for which they and the other trustees enjoy official immunity *under the exact same statute* in their *exact same capacity* as Fund trustees. Courts should not read a statute—here, the TTCA—in such a way as to create an absurd result. *Barshop,* 925 S.W.2d at 629; *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987); *Mueller v. Beamalloy, Inc.,* 994 S.W.2d 855, 860 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

We overrule Williams's challenges to the dismissal of his claims against the City.

## REMEDY

Although we overrule Williams's issues, there is jurisdictional error requiring modification. Because the trial court properly determined that it had no subject matter jurisdiction over certain of Williams's claims—an issue that the court would have had to reach before determining the merits—it erred in rendering a take-nothing judgment on them, rather than dismissing those claims without prejudice. *See Functional Restoration Assocs.,* 19 S.W.3d at 406; *see also Bell v. State Dep't of Highways & Pub. Transp.,* 945 S.W.2d 292, 295 (Tex.App.-Houston [1st Dist.] 1997, writ denied). A court may not rule on the merits of claims over which it has no jurisdiction. Accordingly, we modify the judgment to reflect dismissal of Williams's statutory and common law claims against the Fund, the trustees, and the City for lack of subject matter jurisdiction. *See* Tex. R.App. P. 43.2(b).

## CONCLUSION

We modify the judgment rendered on Williams's statutory and common law claims against the Fund, the trustees (in either capacity), and the City to dismiss those claims without prejudice for lack of subject matter jurisdiction. We affirm the judgment as so modified.

Justice TAFT, concurring in part and dissenting in part.

Justice COHEN, who was a member of the panel on original submission in this cause and who retired before this opinion's issuance, not participating on rehearing.

TIM TAFT, Justice, concurring and dissenting opinion on rehearing.

I concur in the majority's disposition affirming, after modification, the trial court's judgment insofar as it was rendered for appellee the City of Houston ("the City") on the ground of governmental immunity from suit. I respectfully dissent, however, from the majority's disposition of the judgment insofar as it was rendered for appellee the Houston Firemen's Relief and Retirement Fund ("the Fund") and the individual appellees (collectively "the trustees"). Accordingly, I would grant the rehearing motion of appellant, Elmer F. Williams II, deny the Fund and the trustees' joint rehearing motion as moot, affirm the judgment in part, reverse the judgment in part, and remand the cause with instructions.

## WILLIAMS'S CHALLENGES TO THE ADOPTION OF THE GUIDELINES AND TO THE PSC DETERMINATION

I first disagree with the majority's holding that the trial court lacked subject-matter jurisdiction over certain of Williams's challenges to the adoption of guidelines ("the guidelines") establishing prerequisites for prior service credit ("PSC") and the determination of Williams's PSC request. I would instead hold that the trial court had jurisdiction to consider these particular challenges, and I would reach their merits.

## A. Jurisdiction

The Fund's board is "in the nature of a public administrative body." *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 728 (Tex.App.-Corpus Christi 1994, writ denied); *cf. Thayer v. Houston Mun. Employees Pension Sys.,* 95 S.W.3d 573, 576–77 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that municipal pension system and board, as state-created, governmental entities, are generally immune from tort liability). Persons aggrieved by an administrative agency's action have no absolute right to challenge that action in court: the right of judicial review of an agency determination exists only when

1. a statute allows judicial review,

2. the agency's action adversely affects a vested property right,

3. the agency's action violates certain constitutional rights,

4. the action exceeds the agency's jurisdiction, or

5. the agency action involves a pure question of law, such as the interpretation of a statute, when the agency does not have exclusive jurisdiction to determine that question of law.

*See Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 599 (Tex. 2001); *Helton v. R.R. Comm'n,* No. 01–01–01007–CV, slip op. at 8 (Tex.App.-Houston [1st Dist.] June 5, 2003, no pet. h.); *Dep't of Protective & Regulatory Servs. v. Schutz,* 101 S.W.3d 512, 522 (Tex.App.-Houston [1st Dist.] 2002, no pet. h.); *Yamaha Motor Corp., U.S.A. v. Motor Vehicle Div., Tex. Dept. of Transp.,* 860 S.W.2d 223, 230 (Tex.App.-Austin 1993, writ denied); *Int'l Union of United Auto. Aerospace & Agric. Implement Workers of Am. Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 566 (Tex.App.-Dallas 1991, writ denied).

Williams asserted below and in this Court that each of the five bases for review listed above gave the trial court jurisdiction, before he was eligible to retire or was disabled, to review the Fund's adoption of the guidelines and its PSC determination. In two opinions, we rejected all five bases on which Williams sought judicial review, holding that he could not assert his challenges in court until he was eligible to retire or disabled. *See Williams v. Houston Firemen's Relief & Ret. Fund,* No. 01–98–00681–CV, slip op. at 5–8, 12–14, 1999 WL 82441 (Tex.App.-Houston [1st Dist.] Feb. 11, 1999, no pet.) (not designated for publication) (interlocutory appeal; hereinafter *"Williams I"*); *Williams v. Houston Firemen's Relief & Ret. Fund,* No. 01–99–01361–CV, slip op. at 11–12, 20–23, 2001 WL 1671349 (Tex. App.-Houston [1st Dist.] Dec. 27, 2001, no pet. h.) (not designated for publication) (appeal after final judgment; hereinafter *"Williams II"*).

I still agree with our holding in *Williams I* and *Williams II,* and with the majority here, that the express language of the current retirement statute does not provide for judicial review at this time.[1]

---

1. Williams argues extensively on rehearing that *Dubai Petroleum v. Kazi,* 12 S.W.3d 71 (Tex.2000), and its progeny affect this holding by removing the prerequisite found in the retirement statute's judicial-review provision that Williams be eligible to retire or be disabled. I need not discuss the potential effect of *Kazi* on the retirement statute's judicial-review provision because I would ultimately rule that the trial court nonetheless presently has jurisdiction over all of Williams's challenges to the adoption of the guidelines and the PSC determination. In contrast, Williams's *Kazi* argument is not mooted by the majority's disposition of his challenges to the adoption of the guidelines and the PSC determination.

The majority nonetheless claims that it need not address *Kazi* specifically because its

*See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), §§ 2(j), 12(a) (Vernon 2003). However, unlike the majority, I would now hold that the trial court had jurisdiction to consider and to declare whether the Fund correctly interpreted the former retirement statute's PSC provision—the Fund's sole basis for both its adoption of the guidelines and its PSC determination—because the Fund's actions involved statutory interpretation, a pure question of law that the Fund applied to undisputed facts,[2] and because the Fund did not have exclusive jurisdiction to interpret the statute.

Texas trial courts are courts of general jurisdiction, and they presumably have subject-matter jurisdiction unless a contrary showing is made. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex.2002); *Dubai Petroleum v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000). This is due to article V, section 8 of the Texas Constitution, which provides that a trial court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8; *see* TEX. GOV'T CODE ANN. § 24.007 (Vernon 1988) (giving district courts jurisdiction provided by Texas Constitution article V, § 8); *id.*

current discussion already addresses one holding of *Kazi:* that district courts are presumed to have subject-matter jurisdiction unless a contrary showing is made. *See id.* at 74–75. That is not *Kazi's* exclusive holding, and it is merely the starting point for Williams's rehearing argument. Williams's principal rehearing argument relies on *Kazi's* further holding that statutory prerequisites to suit are generally not jurisdictional, overruling years of precedent to the contrary. *See id.* at 76. He claims that the retirement statute's requirement that he be eligible to retire or be disabled before he may sue is the type of statutory prerequisite to suit that *Kazi* held was not jurisdictional, allegedly relieving him of the need to meet that requirement before suing. *That Kazi*-based argument is not addressed by the majority's current discussion of the jurisdictional issues, which discussion is anchored on the premise that the retirement statute's judicial-review provisions are jurisdictional. Based on two of this Court's recent opinions and on the type of statutory requirement involved here, I happen to disagree with Williams that *Kazi* affects the jurisdictional nature of the judicial-review requirement. *See Harris County Emergency Servs. Dist. No. 1 v. Miller*, 122 S.W.3d 218, 222–228 (Tex. App.-Houston [1st Dist.] Aug. 7, 2003, no pet. h.); *Helton v. R.R. Comm'n*, No. 01–01–01007–CV, slip op. at 13, —— S.W.3d ——, ——— ———— (Tex.App.-Houston

[1st Dist.] June 5, 2003, no pet. h.). But I also recognize that an earlier opinion of this Court, on which Williams relies on rehearing, likely conflicts with *Miller* and *Helton*. *See Fincher v. Bd. of Adjustment of the City of Hunters Creek Vill.*, 56 S.W.3d 815, 817 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The majority should address the matter. For this reason, too, I respectfully decline to join the majority's opinion.

2. As for the guidelines, the Fund admits that it adopted them based solely on its interpretation of the former retirement statute's PSC provision, a basis involving a pure question of law. As for the PSC determination, the undisputed evidence that Williams produced at the PSC hearing satisfied his interpretation of the former retirement statute's PSC provision, but could not satisfy the Fund's new interpretation of the PSC provision, *i.e.*, the guidelines. The sole reason that the Fund denied Williams's request for PSC was that he did not meet the guidelines. The PSC determination was thus based entirely on the guidelines—a pure question of law because it involved a statutory construction that was applied to undisputed material facts. Therefore, although Williams phrases his challenges to the PSC determination in evidentiary terms (*e.g.*, "substantial evidence," "insufficient evidence," "no evidence"), those challenges actually involve pure questions of statutory interpretation applied to undisputed facts.

§ 24.008 (Vernon 1988) ("The district court may hear and determine any cause that is cognizable by courts of law or equity...."). In contrast, "there is no presumption that administrative agencies are authorized to resolve disputes. Rather, they may exercise only those powers the law, in clear and express statutory language, confers upon them.... Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Subaru,* 84 S.W.3d at 212.

Courts have jurisdiction to perform the inherently judicial function of determining pure questions of law, such as interpreting a statute. *See Johnson Controls, Inc.,* 813 S.W.2d at 566; *see also* TEX. CONST. art. V, § 8; *Cooper v. St. Paul Fire & Marine Ins. Co.,* 985 S.W.2d 614, 616 (Tex.App.-Amarillo 1999, no pet.) ("[M]atters of statutory interpretation ... are nothing more than questions of law."). Under article V, section 8, that jurisdiction remains in the district court unless, and only unless, the Legislature grants an agency exclusive jurisdiction over the question of law. *See* TEX. CONST. art. V, § 8 (providing for broad, inherent district-court jurisdiction *"except in cases where exclusive ... jurisdiction may be conferred ... on some other court, tribunal, or administrative body"*) (emphasis added); *Johnson Controls, Inc.,* 813 S.W.2d at 566. The majority claims that the retirement statute grants exclusive jurisdiction to the Fund to determine all matters relating to the Fund's operation and administration, including interpreting the retirement stat-ute. I disagree that the Legislature intended for the Fund to have exclusive jurisdiction over statutory interpretation, especially after the Fund has issued a final order for which no administrative remedies were prescribed.[3]

An administrative agency has exclusive jurisdiction over a matter only when the Legislature grants it the sole authority to determine that matter. *See Subaru,* 84 S.W.3d at 221. Determining whether an agency has exclusive jurisdiction is a question of statutory interpretation. *Id.* Therefore, the question of whether an agency has exclusive jurisdiction is a question of law, to be reviewed de novo. *Id.* at 222.

This Court recognized in *Williams I* that none of the former retirement statute's provisions gave the Fund exclusive jurisdiction to interpret or to construe the statute. *See id.,* slip op. at 13–14. I continue to adhere to that view. The former retirement statute, like its successor, provided that the Fund's board "has, in addition to all other powers and duties arising out of this Act ... the duty and power to control and [to] manage the operation and administration of the fund according to the terms and purposes of this Act and all applicable sections of the code and all powers necessary to accomplish these purposes...." *See* Act of May 28, 1989, 71st Leg., R.S., ch. 1095, § 2(j), 1989 Tex. Gen. Laws 4492, 4493–94 [hereinafter "former TEX.REV.CIV. STAT. ANN. art. 6243e.2, § 2(j)"], *repealed by* Act of May 21, 1997, 75th Leg., R.S., ch. 1268, § 3, 75 Tex. Gen Laws 4794, 4811 (current version at TEX.

---

**3.** As we did in *Williams I* and *Williams II,* the majority states that Williams has exhausted his administrative remedies. Actually, the retirement statute makes the complained-of PSC ruling, like all of the Fund's rulings, final without then providing for administrative remedies to exhaust. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(j) (Vernon 2003); *id.,* art. 6243e.2(1), § 12(a) (Vernon 2003). The statute then allows judicial review of such final rulings upon the occurrence of a triggering event: eligibility for retirement or disability. *See id.* § 12(a). Therefore, Williams did not technically exhaust administrative remedies, though he did obtain a final ruling.

REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p) (Vernon 2003)); *see also* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p) (providing for similar powers). Both versions of the retirement statute also identify specific powers that are included within the general delegation of power.[4]

Neither the enumerated nor the general powers delegated to the Fund demonstrate a legislative intent to grant the Fund exclusive jurisdiction over matters of statutory interpretation. *Subaru* shows why. In *Subaru*, the supreme court considered whether and to what extent the former Texas Motor Vehicle Code granted the Motor Vehicle Board exclusive jurisdiction over the plaintiff's claims for code violations, Deceptive Trade Practices—Consumer Protection Act[5] ("DTPA") violations, contract breach, and bad faith. *See Subaru*, 84 S.W.3d at 217, 220–21. In its original opinion, the supreme court concluded that article 4413(36), section 3.01(a) of the former Code, quoted below as it then read, did not give the board exclusive jurisdiction over the plaintiff's claims:

(a) The board has the *general and original power and jurisdiction to regulate all aspects of* the distribution, sale, and leasing of motor vehicles *and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of this power and jurisdiction, including the original jurisdiction to determine questions of its own jurisdiction. . . . .*

(b) Unless otherwise specifically provided by Texas law not in conflict with the terms of this Act, all aspects of the distribution and sale of motor vehicles shall be governed exclusively by the provisions of this Act.[6]

*See Subaru*, 44 Tex. S.Ct. J. 779, 781, 783–85, 2001 WL 578337 (Tex May 31, 2001); *accord Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 206, 207 (Tex.2002) (holding, "[W]e disagree that [Texas Motor Vehicle Code] section 3.01(a)'s former version granted the Board exclusive jurisdiction."). The Court reasoned that that version of section 3.01(a) did not use the word "exclusive"; that the Legislature would have

---

**4.** These include the power to "(1) *adopt for the administration of the fund written rules and guidelines not inconsistent with this Act;* (2) *construe all provisions of this Act* . . .; (3) *correct any defect, supply any omission, and reconcile any inconsistency that may appear in this Act* in a manner and to the extent that the board considers expedient to administer this Act for the greatest benefit of all members; (4) select, employ, and compensate such employees as the board considers necessary or advisable in the proper and efficient administration of the fund; (5) determine all questions relating to eligibility for participation, service, or benefits or relating to the administration of the fund for the purpose of promoting the uniform administration of the fund for the benefit of all members; and (6) establish and maintain all records as are necessary or appropriate to the proper administration of the fund." Former TEX REV.CIV. STAT. ANN art. 6243e.2, § (2)(j) (emphasis added); *see also* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 2(p) (Vernon 2003) (providing for similar powers).

**5.** TEX. BUS. & COM.CODE ANN. §§ 17.41–.50 (Vernon 2002).

**6.** Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 11, 1997 Tex. Gen. Laws 2185, 2191, *amended by* Act of May 18, 2001, 77th Leg., R.S., ch. 155, § 5, 2001 Tex. Gen. Laws 313, 317, *repealed & codified by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 5, 2001 Tex. Gen. Laws 4936, 4936–37, *amended by* Act of May 20, 2003, 78th Leg., R.S., H.B. 3507, § 14A.605(a) (to appear at TEX OCC. CODE ANN. § 2301.151) (emphasis added). Texas Revised Civil Statute article 4413(36) was repealed and codified in the Texas Occupations Code effective June 1, 2003. For simplicity's sake, I refer to all versions of any section of superseded article 4413(36) that were effective at the time of either *Subaru* opinion as "former TEX.REV.CIV. STAT. ANN. art. 4413(36), § ——," generally without further citation to session law.

said that section 3.01(a)'s grant was exclusive if it had meant for it to be; and that other sections of the same Code expressly granted the board exclusive jurisdiction.[7] *See Subaru,* 44 Tex. S.Ct. J. at 783–84, 2001 WL 578337.

Around the time that the original opinion issued, however, the Legislature amended article 4413(36), section 3.01(a) of the former Code retroactively. *See Subaru,* 84 S.W.3d at 218–19. On rehearing, the *Subaru* Court held that amended section 3.01(a), quoted below, showed a clear legislative intent to grant exclusive jurisdiction to the board over matters governed by the Code, thus requiring exhaustion of remedies for those matters:

> (a) The board has the *exclusive, original jurisdiction* to regulate those aspects of the distribution, sale, and leasing of motor vehicles as governed by this Act *and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of this power and jurisdiction,* including the original jurisdiction to determine questions of its own jurisdiction.[8]

*See id.* at 218.

Although *Subaru* and this case differ in several ways, they have important similarities.[9] The retirement statute's jurisdictional grant resembles the pre-amendment jurisdictional grant reviewed on original submission in *Subaru.* Neither of those jurisdictional provisions employed the term "exclusive." Each gave the agency broad powers, general and enumerated.[10] Both statutes provided a pervasive regulatory scheme for the matters that the agency governed.[11] Nonetheless, until section

---

**7.** The Court also considered the Code's limited review provisions, the board's inability to award damages, and the Code's purpose in holding that the board did not have exclusive jurisdiction over the plaintiff's common-law and DTPA claims. *See Subaru,* 44 Tex. S.Ct. J. at 784–85, 2001 WL 578337. Those considerations are not particularly applicable to Williams's challenges against the Fund, which are not based on the common law or the DTPA.

**8.** Act of May 18, 2001, 77th Leg., R.S., ch. 155, § 5, 2001 Tex. Gen. Laws 313, 317, *repealed & codified by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 5, 2001 Tex. Gen. Laws 4936, 4936–37, *amended by* Act of May 20, 2003, 78th Leg., R.S., H.B. 3507, § 14A.605(a) (to appear at Tex. Occ Code Ann. § 2301.151) (emphasis added).

**9.** One difference that I find immaterial is that *Subaru* concerned exhaustion of administrative remedies, while this case does not. A statute that requires one to exhaust administrative remedies to obtain a final ruling before seeking court review (*Subaru's* situation) is analogous to a statute requiring one to wait for a triggering event, despite having obtained a final agency ruling, before seeking court review (Williams's situation). Both types of statutes allow judicial review after certain

prerequisites are met. And the rationale underlying the requirements in either situation is the same: the sovereign may generally not be sued without its consent, *i.e.,* without a statute that provides a means for review. *See Helton,* No. 01–01–01007–CV, slip op. at 8, at ——; *Dep't of Protective & Regulatory Servs. v. Schutz,* 101 S.W.3d 512, 522 (Tex.App.-Houston [1st Dist.] 2002, no pet. h.).

**10.** *See* former Tex.Rev.Civ. Stat. Ann. art. 6243e.2, § (2)(j); *see also* Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 2(p); former Tex.Rev. Civ. Stat. Ann. art. 4413(36), § 3.01(a); *id.* §§ 3.03–.06 (granting board broad powers, general and enumerated; including power to issue rules and to make conclusions of law).

**11.** *See, e.g.,* former Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 1.02 (establishing as Code's purposes to ensure sound distribution and selling system through licensing and regulation and to prevent fraud, discrimination, and other abuses through Code's enforcement); *id.* § 3.02 (establishing board's duties); *id.* §§ 4.01–.07, 5.01–.05 (providing for detailed regulation of governed entities, establishing requisites for licenses, making certain conduct by or between governed entities unlawful, etc.); *id.* §§ 6.01–.07 (providing for enforcement of matters governed by the Code).

3.01(a) was amended in ways that materially distinguish it from the retirement statute here, the *Subaru* court held that pre-amendment section 3.01(a) did not grant the board exclusive jurisdiction over the plaintiff's claims, based in large part on that section's language. And the supreme court reached the same conclusion concerning pre-amendment section 3.01(a) in *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex.2002).

The majority believes my position to be that courts should not recognize an agency's exclusive jurisdiction unless the Legislature expressly uses the term "exclusive." That is not my position. The Legislature can, of course, create exclusive jurisdiction by otherwise clearly showing its intent to grant the agency the sole authority over a particular matter.[12] *See Subaru*, 84 S.W.3d at 221 (explaining that agency has exclusive jurisdiction *"when* a pervasive regulatory scheme *indicates that [the Legislature] intended for the regulatory process to be the exclusive means* of remedying the problem to which the regulation is addressed.") (emphasis added); *cf. Wichita County v. Hart*, 917 S.W.2d 779, 783 (Tex.1996) ("If [a statutory] provision's wording does not indicate whether the Legislature wanted courts to consider it

jurisdictional, we must resolve the issue by applying rules of statutory construction.").

The majority views the retirement statute's comprehensive regulatory scheme to show that intent. I do not. Many agencies are granted broad powers (like those given to the Fund) to enforce and to administer complex regulatory schemes. That fact alone, without something indicating that the Legislature further intended some or all of those powers to be exclusive, cannot be enough. If that fact alone sufficed, most agencies could be deemed to have exclusive jurisdiction over most of the matters that they regulate. And if that fact alone had sufficed, the *Subaru* and *Butnaru* courts would have held that the former version of section 3.01(a) granted exclusive jurisdiction. *See Subaru*, 44 Tex. Sup.Ct. J. at 783–85, 2001 WL 578337; *Butnaru*, 84 S.W.3d at 206. They did not so hold. The majority's view also runs against the construct that we should normally not imply additional authority to agencies. *See Subaru*, 84 S.W.3d at 220.

In this retirement statute, I see the Legislature's intent to grant broad powers to the Fund to carry out the statute's purposes. I also see the Legislature's intent to allow the Fund the first shot at ruling on matters that the statute governs

**12.** However, I do note that the Legislature often—if not usually—expressly employs the term "exclusive" when it wishes to grant exclusive jurisdiction to an agency. *See* Tex. Bus. & Com.Code Ann. § 43.052(a) (Vernon 2002); *id.* § 43.102(b) (Vernon 2002); *id.* § 43.153(a) (Vernon 2002); Tex. Educ.Code Ann. § 30.022(h) (Vernon 1996); *id.* § 30.052(h) (Vernon 1996); Tex. Loc. Gov't Code Ann. § 232.096(d) (Vernon Supp.2003); Tex. Nat. Res.Code Ann. § 131.022 (Vernon 2001); *id.* § 134.012(a)(1), (2) (Vernon 2001); Tex. Occ.Code Ann. § 2301.354 (Vernon Supp. 2003); Tex. Transp. Code Ann § 61.006 (Vernon 1999); *id.* § 62.024 (Vernon 1999); *id.* § 62.067 (Vernon 1999); *id.* § 66.015 (Vernon 1999); *id.* § 67.015 (Vernon 1999); *id.* § 68.015 (Vernon 1999); *id.* § 70.015 (Vernon 1999); *id.* § 366.171(d), (e) (Vernon 1999); Tex. Util.Code Ann. § 32.001(a)(1), (2), (b) (Vernon 1998); *id.* § 33.002(b) (Vernon 1998); *id.* § 41.055 (Vernon Supp.2003); *id.* § 52.002(a) (Vernon 1998); *id.* § 60.002(a) (Vernon 1998); *id.* § 60.122 (Vernon 1998); *id.* § 102.001(a), (b) (Vernon 1998); *id.* § 103.003(a) (Vernon Supp.2003); *id.* § 104.201(a) (Vernon 1998); Tex Water Code Ann. § 13.042(a), (b), (e) (Vernon 2000); *id.* § 36.011(b) (Vernon Supp.2003); *id.* § 51.027(a) (Vernon 2000); *id.* § 51.049(a) (Vernon 2000); *id.* § 56.249(e) (Vernon 2002); *id.* § 58.027(a) (Vernon Supp.2003); *id.* § 62.028(a) (Vernon 1988); *id.* § 63.030(a) (Vernon 1988); former Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 3.01(a); *id.* § 5.01(4).

(akin to primary jurisdiction, though that rule does not apply here). But I see no legislative intent, once the Fund has made and applied a statutory interpretation to undisputed facts in arriving at a final order, to make that interpretation the sole province of the Fund, to the exclusion of the courts, when interpreting statutes is one of the *raisons d'être* of any court.

I write further to respond to the majority's arguments against my position. Because the majority believes that the Fund has exclusive jurisdiction over legal questions, it concludes that my position would eviscerate agencies' exclusive jurisdiction. That view misunderstands my position, which is simply that, in the absence of statutory authority to do so, courts may still consider pure questions of law that are raised by an agency's action *when the agency itself does not have exclusive jurisdiction* over the particular question of law.

*See Johnson Controls, Inc.*, 813 S.W.2d at 566. If I read the retirement statute to grant the Fund exclusive jurisdiction over pure legal questions, I would not apply the pure-question-of-law exception here. I do not so read the statute, however.

The majority next implies that parties might nonetheless abuse the pure-question-of-law exception by falsely claiming that every agency ruling fits the exception. In answer, I begin by noting that the pure-question-of-law exception is well accepted, having expressly been recognized or applied by at least seven courts of appeals (including ours) and having been recognized, though not applied, by the Texas Supreme Court.[13] I have found no court that has denied the exception's existence. If the supreme court uses this case to reconsider the validity of this exception, or if it decides that the exception does not

---

**13.** *See Grounds v. Tolar*, 707 S.W.2d 889, 892 (Tex.1986) (recognizing exception, but not applying it because question was not one of pure law, and for other reasons distinguishing the case from the one currently under review); *City of Austin v. Pendergrass*, 18 S.W.3d 261, 264–65 (Tex.App.-Austin 2000, no pet.) (recognizing and applying exception); *Frasier v. Yanes*, 9 S.W.3d 422, 427 (Tex.App.-Austin 1999, no pet.) (same); *Hicks v. Lamar Consol. Indep. Sch. Dist.*, 943 S.W.2d 540, 542–43 (Tex.App.-Eastland 1997, no writ) (recognizing exception, but not applying it because fact issues existed); *Mercedes Indep. Sch. Dist. v. Munoz*, 941 S.W.2d 215, 216–18 (same); *Jones v. Dallas Indep. Sch. Dist.*, 872 S.W.2d 294, 296 (Tex.App.-Dallas 1994, writ denied) (same); *Tex. Dept. of Health v. Tex. Health Enters., Inc.*, 871 S.W.2d 498, 508 (Tex.App.-Dallas 1993, writ denied) (recognizing and applying exception), *overruled on other grounds by Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401 (Tex.1997); *Int'l Union of United Auto. Aerospace & Agric. Implement Workers of Am. Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 566 (Tex.App.-Dallas 1991, writ denied) (same); *Houston Indep. Sch. Dist. v. Houston Fed'n of Teachers, Local 2415*, 715 S.W.2d 369, 370 (Tex.App.-Houston [1st Dist.] 1986) (recognizing exception, but

not applying it because fact issues existed), *rev'd on other grounds*, 730 S.W.2d 644 (Tex. 1987); *see also Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 647–48 (Tex.1987) (Kilgarin, J., concurring, joined by Wallace, J.) (recognizing exception); *Jones v. Clarksville Indep. Sch. Dist.*, 46 S.W.3d 467, 471 n. 3 (Tex.App.-Texarkana 2001, no pet.) (noting exception in dictum); *cf. Cooper v. St. Paul Fire & Marine Ins. Co.*, 985 S.W.2d 614, 616 (Tex.App.-Amarillo 1999, no pet.) (holding that complaining party could assert statutory-construction in suit for judicial review, despite not having presented that argument in administrative proceedings because, "the need for exhaustion administrative remedies has generally been held inapplicable to questions of law"); *Pension Bd. of Police Officers Pension Sys. of Houston v. Colson*, 492 S.W.2d 307, 308–09 (Tex.Civ.App.-Beaumont 1973, writ ref'd, n.r.e.) (recognizing, in dictum, exception in support of holding that substantial-evidence review did not apply because agency action involved pure question of law). As explained in footnote 9, above, the fact that these courts applied the exception in the context of exhaustion of administrative remedies supports by analogy the exception's application here.

apply in situations clearly analogous to those involving exhaustation of remedies (see footnote nine above), so be it. Until then, I would recognize and apply the exception here because I believe that this case fits squarely into it.

More importantly, and contrary to the majority's claim, the pure-question-of-law exception is limited, not "expansive." This is especially true here. First, the exception applies only when a *pure* question of law of exists; that is, there must be no material fact issues involved in the agency's action.[14] Determinations of PSC requests, as with most agency rulings, will normally involve the application of law to disputed facts. It is only because of the very unusual circumstances present here— the Fund's admission that it based the guidelines solely on its statutory interpretation and that it denied Williams's PSC request solely for the undisputed reason that he did not meet the guidelines—that the pure-question-of-law exception can apply. And I note that the majority's slippery-slope argument could apply equally well to the other exceptions to judicial review—that the agency action adversely affects a vested property right, violates certain constitutional provisions, or exceeds agency authority. Nonetheless, our supreme court has repeatedly recognized the validity of these exceptions, rather than rejecting them for allegedly allowing the exception to swallow the rule through artful pleading. Parties sometimes do try to label a challenge to an administrative agency's ruling in a way that will fit one of these exceptions, even though the exception does not apply (as Williams did with his "ultra vires" challenge, for example). The response to that type of pleading is to overrule the challenge because it does not truly fit the exception, rather than to eliminate the exception entirely because some litigants might improperly invoke it.

The majority finally contends that applying the pure-question-of-law exception to construe the former retirement statute's PSC provision effectively allows a person "with non-vested rights [in a pension fund] ... to freeze [his] non-vested rights in time and subject them to judicial enforcement" and thus to prevent changes in the retirement law that he might not otherwise be able to prevent. I disagree with this policy argument because of the procedural posture of this case.

First, the Fund affirmatively and consistently urged in its summary judgment motions, as it continues to do on appeal, that the former retirement statute controlled this case and that we should thus apply and construe that statute, rather than the current one.[15] "[A] trial court cannot grant summary judgment for a reason that the movant does not present to the trial court in writing. Also, ... issues an appellate court may review are those the movant actually presented to the trial court." *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996). Accordingly, for purposes of this lawsuit, the Fund has effectively chosen for itself which statutory version applies. *See id.*

14. *See, e.g., Hicks,* 943 S.W.2d at 542, 543; *Munoz,* 941 S.W.2d at 216, 218; *Houston Fed'n of Teachers, Local 2415,* 715 S.W.2d at 370–71; *cf. Colson,* 492 S.W.2d at 308–09.

15. That the Fund would take this position is understandable. Williams's PSC request was decided, and a final order rendered on it, before the current retirement statute was enacted. The amended statute added eligibility requirements for obtaining PSC. Had Williams's PSC request been pending when the Legislature amended the statute, one might have argued that Williams had to comply with the revised legislative prerequisites for obtaining PSC. But that did not happen, and the amended statute was never applied to Williams's PSC request.

Likewise, the Fund has never claimed that Williams's lack of a vested right in the laws' continuation precluded his statutory challenges to the Fund's interpretation of the former retirement statute.[16] If the Fund—the rule–166a(c) summary judgment movant—never claimed that Williams's lack of vested rights precluded his statutory challenges, then neither should the majority rely on a policy argument based on that ground. *Cf. id.*

In sum, Williams's lack of a vested right does not change the rules of summary judgment. Because my proposed holding is based on the application of those rules to the Fund's arguments in this case, that holding would not necessarily "freeze nonvested rights in time" across the board or prohibit the Legislature from altering or repealing statutory pension schemes, as the majority claims.

And even if I am wrong that the pure-question-of-law exception allows Williams presently to obtain a declaration of the former PSC provision's meaning, I note that Williams will have obtained the requisite years of service for retirement under his interpretation of the PSC provision some time later this year. When that time comes, the retirement statute's judicial-review provisions should no longer deprive the trial court of jurisdiction to consider, in a new lawsuit, Williams's challenges to the merits of the Fund's adoption of the guidelines and its denial of his PSC request. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 12(a) (Vernon 2003) (providing that member "who is eligible for retirement for

length of service" and who is "aggrieved by a decision or order of the [Fund's] board, whether on the basis of rejection of a claim or of the amount allowed, may appeal....."). Surely even the Fund would not then argue that Williams must work 20 years before a court has jurisdiction to declare whether he had to work only 13½ years.

Accordingly, I would hold that the trial court had inherent jurisdiction to interpret the PSC provision of the former retirement statute, and consequently to determine and to declare whether the Fund correctly interpreted that provision, regardless of whether the retirement statute provided for present judicial review of the adoption of the guidelines or the PSC determination. *See Johnson Controls, Inc.,* 813 S.W.2d at 565; *see also* TEX. CONST. art. V, § 8. I would sustain the portion of Williams's issue one and his rehearing arguments concerning the trial court's jurisdiction to interpret the former retirement statute's PSC provision (and thus to consider whether the Fund correctly interpreted that provision).

## B. The Merits

Having determined that the trial court presently had jurisdiction to consider Williams's challenges to the adoption of the guidelines and the PSC determination, I would reach the merits of those challenges. The Fund and the trustees' summary judgment motions asserted that the guidelines were a correct interpretation of the former retirement statute's PSC provi-

---

**16.** Again, that the Fund has never taken this position is understandable, given its other consistent position that the guidelines did not make new law, but instead comported with then-existing law. Indeed, an admission that the guidelines changed the law—if that change was inconsistent with the former retirement statute—might also have been an admission that the Fund had violated the

power granted to it to adopt "guidelines *not inconsistent with* this Act." *See* former TEX. REV.CIV. STAT. ANN. art. 6243e.2, § (2)(j)(1) (emphasis added); *see also id.* § (2)(j)(3) (delegating the Fund power to "correct any defect, supply any omission, and reconcile any inconsistency" in retirement statute, which language implies that Fund's actions must be consistent with statute).

sion. By motion for partial summary judgment, Williams asserted that the guidelines were an incorrect interpretation of the former retirement statute's PSC provision. In issue four, Williams argues that the trial court erred to the extent that it granted the Fund's and the trustees' summary judgment motion on this ground.

The former retirement statute's PSC provision was section 30 of Revised Civil Statute article 6243e.2. *See* Act of May 27, 1975, 64th Leg., R.S., ch. 432, § 30, 64 Tex. Gen. Laws 1135, 1148 [hereinafter "former TEX.REV.CIV. STAT. ANN. art. 6243e.2, section 30"], *repealed by,* Act of May 21, 1997, 75th Leg., R.S., ch. 1268, § 3, 75 Tex. Gen. Laws 4794, 4811 (current version at TEX. REV.CIV. STAT. ANN. art. 6243e.2(1), § 16(a) (Vernon 2003)). Former section 30 provided:

"A firefighter who transfers from the fire department of one city to that of a city covered by this Act and desires to participate in the fund of that city shall: ... [meet three requirements]."

Former TEX.REV.CIV. STAT. ANN. art. 6243e.2, § 30(a).

The PSC provision of the current retirement statute, which the Legislature enacted several months *after* the Fund had adopted the guidelines, provides:

"A person who becomes a firefighter in a municipality to which this article applies may receive service credit *for prior employment with the fully paid fire department of another municipality in this state with a similar fund* benefitting only firefighters of that municipality to which the firefighter contributed if ... [the firefighter meets five requirements]."

TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 16(a) (emphasis added). The Fund interpreted the first sentence of former section 30(a) to mean what the italicized portion of current section 16(a) now expressly says, *i.e.,* that years worked for Texas fire departments other than HFD could be credited towards retirement with the Fund only if the former city also had a statutory firefighter's fund similar to that of Houston.

Statutory interpretation is a question of law. *In re Canales,* 52 S.W.3d 698, 701 (Tex.2001). Our primary goal in interpreting a statute is to ascertain and to effectuate the Legislature's intent. *Id.* at 702; *see* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998). In doing so, we begin with the statute's plain language before resorting to rules of construction. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex. 1999). We begin with the plain language because we assume that the Legislature tried to say what it meant; therefore, its words should be the surest guide to its intent. *Id.* at 866. In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex.2001). We presume that every word in a statute was used for a purpose, and we must give each sentence, clause, and word effect if reasonable and possible. *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963).

In construing a statute, we must consider "the old law, the evil, and the remedy," TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998), and the law's nature, its object, and the consequences that would flow from a given construction. *Sayre v. Mullins,* 681 S.W.2d 25, 27 (Tex.1984). The purpose of municipal pension plans is "to provide a pension plan for the type of city employee named." *Davis v. Peters,* 224 S.W.2d 490, 493 (Tex.Civ.App.-Eastland 1949, no writ). We liberally construe the pension statute

here, as with any Revised Civil Statute, to achieve this purpose and to promote justice. *See* TEX. GOV'T CODE ANN. § 312.006(a) (Vernon 1998) (concerning Revised Civil Statutes generally); *Bd. of Firemen's Relief & Ret. Fund Tr. of Houston v. Powers*, 411 S.W.2d 395, 397 (Tex. Civ.App.-Austin 1967, writ ref'd n.r.e.) ("[T]he purpose of the legislation creating a pension plan is to be subserved by a broad and liberal construction of the act, and may not be defeated by a narrow and technical construction."); *Colson*, 492 S.W.2d at 310 (municipal pension plan); *Davis*, 224 S.W.2d at 493 (municipal pension plan).

The Fund and the trustees rely on the rule that "[c]onstruction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993). The Fund's construction of former section 30(a) does not comport with the statute's plain language, however, and I thus conclude that we are not bound by that interpretation. *See id.; see also Firemen's Pension Comm'n v. Jones*, 939 S.W.2d 730, 735 (Tex.App.-Austin 1997, no writ). In adopting the guidelines, the Fund effectively read the phrase, "[a] firefighter who transfers from the fire department of one city to that of a city covered by this Act ...," in former section 30(a) to mean, "[a] firefighter who transfers from the fire department of *one city covered by this Act* to that of *another* city covered by this Act...." Had the Legislature intended the result that the Fund reached in adopting the guidelines, the Legislature would have used such language, or at least language like "[a] firefighter who transfers from the fire department of one city to

that of *another* city covered by this Act...." It did not do so. "Only when it is necessary to give effect to the clear legislative intent can we insert additional words into a statutory provision." *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex.1981). Such an intent is not clear here. If anything, the opposite intent is clearer: because the subordinate clause "[that is] covered by this Act" is placed beside "a city," but not beside "one city," that clause appears to modify only "a city" and not "one city." *See U.S. v. Hodge*, 321 F.3d 429, 436 (3rd Cir.2003) ("The doctrine of the last antecedent teaches that 'qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding' and not to 'others more remote.'") (citation omitted); *see also Carondelet Canal & Navigation Co. v. Louisiana*, 233 U.S. 362, 382, 34 S.Ct. 627, 633, 58 L.Ed. 1001 (1914) ("The natural and grammatical use of a relative pronoun is to put it in close relation with its antecedent, its purpose being to connect the antecedent with a descriptive phrase."); WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE at 29 (3rd ed. 1979) ("The relative pronoun should come, in most instances, immediately after its antecedent.").

Additionally, the timing of the Legislature's amendment of former section 30(a) supports Williams's interpretation. Only *after* the Fund had interpreted former section 30(a) to include the previously unexpressed requirement that the firefighter have transferred from a city with a statutory firefighter's fund did the Legislature amend former section 30 to include that requirement expressly. If the Legislature had thought that former section 30(a) already implicitly included the extra requirement discerned by the Fund, the Legislature would not necessarily have had to

amend the statute.[17] *Cf. Cities of Austin, etc. v. Southwestern Bell Tel. Co.,* 92 S.W.3d 434, 445 (Tex.2002) (holding that, when Legislature re-enacts without material change ambiguous statute that has been given long-standing administrative interpretation, court presumes that Legislature intended statute to have meaning ascribed by agency); *see also Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 187 (Tex.1968); *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46, 50 (1931) (same, concerning court's interpretation).

The Fund and the trustees nonetheless reply that the former retirement statute's history supports their interpretation. Specifically, they claim that former section 30's predecessor expressly said what the Fund construed former section 30(a) to say in the guidelines; therefore, the Legislature must have intended to carry forth the meaning of the predecessor statute into former section 30. I disagree. Former section 30's predecessor was Revised Civil Statute article 6243e, section 7E. *See* Act of May 29, 1967, 60th Leg., R.S., ch. 167, § 3, 1967 Tex. Gen. Laws 348, 349, *repealed by* Act of May 27, 1975, 64th Leg., R.S., ch. 432, § 30, 64 Tex. Gen. Laws 1135, 1148, *repealed by* Act of May 21, 1997, 75th Leg., R.S., ch. 1268, § 3, 75 Tex. Gen. Laws 4794, 4811 (current version at Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 16(a)). Former article 6243e, section 7E read in pertinent part:

(a) *This Section applies only to cities* ... having an organized "fully paid"

fire department *covered by a Firemen's Relief and Retirement Fund.*

(b) A fireman who transfers from the fire department of one city to that of *a city covered by this section* and desires to participate in the fund *of that city* shall: [meet three requirements].

*See* Act of May 29, 1967, 60th Leg., R.S., ch. 167, § 3, 1967 Tex. Gen. Laws 348, 349 (emphasis added). The Fund and the trustees argue that subsection (a)'s statement that "this Section" applied to "cities" that were "covered by a Firemen's Relief and Retirement Fund" referred to *both* the transferor *and* the transferee cities mentioned in subsection (b). This is a misreading of the predecessor statute. Subsection (b) required only that the *transferee* city be "covered by this section"; in context, then, subsection (a) was also speaking about transferee cities. If subsection (a) had meant any city, not just the transferee city, then the phrase "covered by this section" in subsection (b) would have been superfluous. The predecessor statute should not be read this way. *See Perkins,* 367 S.W.2d at 146 (holding that courts should presume that every word in statute is used for purpose, giving each sentence, clause, and word effect if reasonable and possible). I thus read former section 30's predecessor the same as I read former section 30.[18]

The Fund was and is empowered to adopt written rules and guidelines "*not*

---

**17.** The same observation can be made concerning the Fund, for that matter, because Williams's summary judgment evidence indicates that the Fund proposed the bill that became the current retirement statute. If former section 30(a) had already said what the Fund interpreted it to say in the guidelines, the Fund would not have needed the Legislature to amend former section 30(a) to conform with the guidelines.

**18.** Moreover, even if former section 30's predecessor had said what the Fund claims, the fact that the Legislature dropped the predecessor's pertinent language when it enacted former section 30 would, if anything, have evidenced an intent not to carry forward the predecessor's meaning.

*inconsistent with* this [retirement statute]." Former Tex.Rev.Civ. Stat. Ann. art. 6243e.2, § (2)(j)(1) (emphasis added); *see* Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 2(p)(1). The guidelines adopted in this case were inconsistent with that statute. That was error.

For these reasons, I would hold that the Fund's interpretation of the former retirement statute's PSC provision, on which the Fund based both its adoption of the guidelines and its decision to deny Williams's PSC request, was incorrect. I would thus further hold that the trial court (1) erred to the extent that it rendered summary judgment for the Fund and the trustees on the ground that the guidelines were a proper interpretation of the former retirement statute's PSC provision and (2) erred by not granting Williams's motion for partial summary judgment on the ground that the guidelines had improperly interpreted the former retirement statute's PSC provision. Accordingly, I would sustain issue four.

Given my conclusions, I would not reach those portions of Williams's issue one, or his issues three and five through 10, concerning whether the trial court erred in rendering summary judgment on some of his alternative challenges to the adoption of the guidelines and the PSC determination.

**19.** By reaching the merits of Williams's constitutional challenges and common-law claims, the majority effectively concludes that those challenges and claims are ripe, although its reasoning is unexpressed. I agree for reasons of my own. Our holding in *Williams II* that Williams's common-law claims were unripe was based on our earlier holding that the trial court lacked jurisdiction over any of his challenges to the adoption of the guidelines and the PSC determination until he was eligible to retire or was disabled. Because I would hold that the trial court

## WILLIAMS'S COMMON–LAW CLAIMS AGAINST THE TRUSTEES IN THEIR INDIVIDUAL CAPACITIES

I also disagree with the majority's disposition of Williams's common-law claims asserted against the trustees in their individual capacities.

The Fund and the trustees moved for summary judgment on Williams's common-law claims against the trustees individually on the grounds that (1) the trial court lacked subject-matter jurisdiction over the common-law claims because they were not ripe and (2) four affirmative defenses barred the common-law claims. In *Williams II*, we held that Williams's common-law claims were unripe, and we thus did not reach the merits of the trustees' affirmative defenses to those claims. *See Williams II*, slip op. at 22–23. Departing from the ripeness holding of *Williams II*,[19] the majority opinion on rehearing affirms the summary judgment rendered for the trustees individually on the basis of one of the four affirmative defenses: official immunity. Because I disagree that the Fund and the trustees proved this affirmative defense as a matter of law, I would sustain Williams's challenge to the rendition of summary judgment on the ground of official immunity. I would then consider whether the trial court properly rendered summary judgment in favor of the trustees individually based on the three remaining affirmative defenses.[20]

presently had jurisdiction to interpret the former retirement statute's PSC provision, I would further hold that the trial court erred to the extent that it granted summary judgment against the common-law claims on the ground of ripeness.

**20.** I reach Williams's challenges to the individual trustees' three remaining affirmative defenses because my disposition of them determines whether I concur with or dissent from the majority's judgment.

## A. Official Immunity

In issue 15, Williams argues that the trial court erred in granting the Fund and the trustees' summary judgment motion on the ground that official immunity shielded the trustees in their individual capacities from Williams's common-law claims. I agree.

The trustees had the burden to prove this affirmative defense as a matter of law. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Government officials are entitled to official immunity from suit arising out of their performance of (1) discretionary duties (2) performed in objective good faith, as long as the officials are (3) acting within the scope of their authority. *Id.* The parties disputed only the good-faith element. To carry their burden of showing good faith, the trustees had to produce evidence that a reasonably prudent trustee might have believed that his actions in adopting the specific guidelines and determining Williams's PSC request were reasonable and lawful, in light of clearly established law and the information then possessed by the trustee. *See id.* at 656–57.

The trustees submitted the affidavits of appellee trustees Maxie Patterson, Donnie R. Meyers, and George E. Lowdermilk in support of this ground of their motion. These affidavits each read in pertinent part as follows:

In 1996, the Board was faced with the task of considering many applications for prior service credit. As permitted by the statute, the Board determined that it needed to promulgate general written guidelines to aid in determination of all prior service credit applications. At its regularly-scheduled meeting on July 25, 1996, the Board promulgated guidelines for prior service credit, which are reflected in a July 26, 1996, letter sent to Williams.

As a Board member, it was my duty to participate in the Board's exercise of its functions, which include administering the Fund, construing the act and determining all questions relating to eligibility for participation. I interpreted the statute to require that a transferring firefighter come from a fully-paid fire department of a Texas city having its own firefighters' relief and retirement fund similar to the Fund, which is the interpretation that the Board adopted.

As a Board member, it was also my duty to participate in the Board's adjudication of the prior service credit applications. In connection with Williams's application, I considered the interpretation of the statute adopted by the Board, the application and materials submitted by Williams, and Williams's testimony at the December 19, 1996, administrative hearing. Based on those items, I concluded that Williams's application did not meet the statutory requirement for prior service credit in that he had not transferred from a city having its own firefighters' relief and retirement fund.

The three affidavits merely state what the trustees did—that they adopted and applied the guidelines to Williams's PSC request—and what the former retirement statute generally empowered the board to do—to interpret the statute, to adopt guidelines, and to determine PSC applications. The affidavits do not explain how a reasonably prudent trustee might have believed that adopting and applying these particular guidelines did not commit the wrongs that Williams alleged. That is, the affidavits do not explain *why* the trustees interpreted the statute as they did or why that interpretation was objectively reason-

able.[21] Explaining why a trustee might have viewed the interpretation upon which the guidelines were based to be objectively reasonable (even if that interpretation was incorrect) was important, given Williams's allegations that the trustees had purposefully changed their interpretation for the sole and improper purpose of defeating pending PSC requests and given his evidence that the Fund had afterwards petitioned the Legislature to amend the statute in ways supporting the Fund's earlier interpretation. The evidence of objective good faith had to be tailored to the plaintiff's allegations and could not simply be stated in the abstract.

For these reasons, I conclude that the trustees' affidavits do not meet *Chambers's* test for proving good faith. The opinion in *Campbell v. Jones*,[22] upon which the majority relies for the proposition that good-faith immunity can shield an official even if he misinterprets or violates the law or incorrectly adjudicates a claim (a general proposition with which I have no dispute), shows that the trustees' affidavits do not suffice. In *Campbell*, a teacher sued school-board trustees individually for having incorrectly determined that her employment contract was invalid because she allegedly had not met the regulatory requirements to fulfill that contract. *See id.* at 425–26. The parties had stipulated that the trustees "actually believed in good faith" that no valid contract existed because the teacher did not meet the regulatory requirements for teaching; "acted at all times without any intent to deprive" the teacher of her contract salary, "without any corrupt motives," and "without bad faith in any respect"; "acted on the advice of legal counsel, which advice was that no contract existed ... and no money was due" the teacher; and "acted in all respects as to the transactions involved in this cause according to their best judgment in the matter."[23] *See id.* at 426–27. The supreme court held that this evidence showed that the trustees were entitled to official immunity. *See id* at 427. Here, in contrast, the trustees' affidavits did not even attempt to discuss the bases for their actions or how a trustee might have found those bases objectively reasonable.[24]

21. The Fund and the trustees offered an *argument* here and below as to why their interpretation of the former retirement statute's PSC provision was reasonable, but did not produce *evidence* in support. They argued that their interpretation was objectively reasonable given the language of the former retirement statute and of its predecessor, *i.e.*, that a reasonable trustee might in good faith have interpreted the former retirement statute's PSC provision as they did in the guidelines, based on the statute's plain language. However, none of the *affidavits* submitted in support of this argument even stated the basis for the trustees' interpretation, much less why a reasonable trustee in their shoes might objectively have thought that such an interpretation was reasonable. The majority construes the affidavits as testimony by the trustees that "they believed their conduct to be lawful in light of the powers conferred on them by the retirement statute...." I do not read the affidavits that way, but even if I did, that reading would still not explain how a reasonable trustee might objectively have believed the conduct lawful.

22. *See id.*, 153 Tex. 101, 264 S.W.2d 425 (1954).

23. Of course, most of this stipulated evidence went beyond objective good faith and into the realm of subjective good faith. But the point is that the evidence was tailored to the plaintiff's allegations.

24. The majority claims that my position would hold public officials liable "unless they prove [that] their motives are pure"; would make public officials personally liable simply "for getting [statutory] interpretation wrong"; and would establish a subjective standard of good faith. My position does none of these things. I would require nothing more than what *Chambers* does in the context of summary judgment: proof (not merely argument) that a *reasonably prudent trustee* (an objective

I respectfully disagree with the majority's reasons for concluding that the trustees proved as a matter of law that they acted in objective good faith. The majority concludes that the trustees could reasonably have believed that *the general acts* of interpreting the statute's PSC provision, adopting the guidelines, and determining Williams's PSC request were lawful because the former retirement statute gave the trustees the power to do these things. *See* former TEX.REV.CIV. STAT. ANN. art. 6243e.2, § (2)(j) (providing for these powers); TEX.REV.CIV. STAT. ANN. 6243e.2(1), § 2(p) (same). I agree—and so would Williams—that the retirement statute gave these powers to the trustees and that a trustee could thus reasonably believe that construing the retirement statute, adopting guidelines, and determining PSC requests, *in the abstract,* was lawful. But that was not the basis for Williams's common-law claims against the trustees individually. Rather, these claims were based on the trustees' allegedly *abusing those general powers* by adopting guidelines that they supposedly knew were groundless solely in order to deny pending PSC requests. Given Williams's allegations, I believe that the proper focus is on the objective reasonableness of adopting *this interpretation and these guidelines,* rather than on the objective reasonableness of adopting guidelines, interpreting the statute, or determining PSC requests

in general. *See, e.g., Campbell,* 264 S.W.2d at 426–27 (focusing on evidence concerning reasonableness of motives for making particular decision claimed to be wrongful).

I would thus sustain issue 13.

## B. Texas Tort Claims Act ("TTCA")[25] Section 101.106

In issue 11, Williams argues that the trial court erred in granting the Fund and the trustees' summary judgment motion on the ground that TTCA section 101.106 barred his common-law claims against the trustees in their individual capacities. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997). I agree.

The trustees had the burden to prove this affirmative defense as a matter of law. *See Urban v. Canada,* 963 S.W.2d 805, 807 (Tex.App.-San Antonio 1998, no pet.). They based their section 101.106 summary judgment ground on one order and one judgment: (1) the interlocutory order[26] dismissing some of Williams's challenges to the Fund's actions, which order we reviewed in *Williams I,* and (2) a summary judgment disposing of Williams's equal-protection and due-process claims in a federal suit that arose out of the same incident involved here.

TTCA section 101.106 bars an action against a government employee when

---

standard) *might have believed* (not subjectively believed) that his actions in adopting the guidelines and determining the PSC request were reasonable and lawful, in light of clearly established law and the information then possessed by the trustee. If the trustees' affidavits had shown something along these lines—a relatively easy standard—then the fact that they got the interpretation wrong would not have deprived them of the defense of official immunity.

25. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.2003).

26. Because Williams has not argued otherwise on appeal or below, I assume without deciding for purposes of my discussion that an interlocutory order rendered for the Fund could trigger section 101.106's application, despite some case law to the contrary. *See Lowe v. Teator,* 1 S.W.3d 819, 822 (Tex.App.-Dallas 1999, pet. denied); *Johnson v. Resendez,* 993 S.W.2d 723, 726–27 (Tex.App.-Dallas 1999), *pet. dism'd, improvidently granted,* 52 S.W.3d 689 (Tex.2001) (noting that no conflicts jurisdiction existed on this issue).

there is a "judgment in an action or a settlement of a claim *under this chapter*" involving the same subject matter against his government employer. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (emphasis added). The TTCA waives sovereign immunity from suit only for certain claims for property damage, personal injury, or death. *See id.* § 101.021 (Vernon 1997). Williams did not assert these or any other tort claims against the Fund in either lawsuit, and he thus did not have to avail himself of the waiver of sovereign immunity from suit found in the TTCA. *See id.* Therefore, his judicial challenges to the Fund's actions were not ones "under this chapter" for purposes of section 101.106. *See White v. Annis*, 864 S.W.2d 127, 130 (Tex.App.-Dallas 1993, writ denied) (noting that "[w]hether the plaintiff's claim against the governmental unit falls under the [TTCA] is relevant" to whether TTCA section 101.106 bars claims against governmental unit's employee); *see also Welch v. Coca–Cola Enters., Inc.*, 36 S.W.3d 532, 538 (Tex.App.-Tyler 2000, pet. withdrawn pursuant to settlement) (stating that TTCA section 101.106 did not protect government employee because plaintiff's suit against employer governmental entity was for contract breach, to which TTCA did not apply).

For these reasons, the cited order and judgment could not trigger section 101.106's application or bar Williams's common-law claims against the trustees individually. I would thus hold that the trial court erred to the extent that it rendered summary judgment on this ground. Accordingly, I would sustain issue 11.

---

**27.** I note that we neither held nor implied in *Williams I* that the trustees were performing quasi-judicial determinations that might entitle them to absolute judicial immunity. *See id.,* slip op. at 10.

**28.** The Fund and the trustees also relied on TTCA section 101.053, which exempts certain

## C. Absolute Judicial Immunity

In issue 14, Williams argues that the trial court erred in granting summary judgment on the ground that the trustees enjoyed absolute judicial immunity in their individual capacities from his common-law claims. I agree.

The trustees had the burden to prove this affirmative defense as a matter of law. *See Rea v. Cofer*, 879 S.W.2d 224, 227 (Tex.App.-Houston [14th Dist.] 1994, no writ). They argued below that they were entitled to absolute judicial immunity for their actions taken as part of the "adjudication of [Williams's] claim for prior service credit." The extent of the trustees' summary judgment argument was as follows:

> In determining Williams's claims, the trustees were performing core judicial functions, and such functions are historically afforded absolute immunity. . . . The Fund and its Board of Trustees constitute a "governmental unit" to which judicial immunity potentially applies. As held by [this Court in *Williams I* ], the trustees were performing quasi-judicial determinations in the scope of their statutory authority and administrative capacity.[27] The adjudication of Williams's claim for prior service credit thus constitutes a core judicial function, and the trustees are entitled to absolute immunity.[28]

(Citations omitted.)

"Judges enjoy absolute judicial immunity from liability for judicial acts, no matter

claims against governmental entities from the TTCA's waiver of immunity when the claim is based on, among other things, a judicial function of a governmental unit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.053(a) (Vernon 1997). Section 101.053 has no application in this suit because Williams asserted his com-

how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction." *City of Houston v. W. Capital Fin. Servs. Corp.*, 961 S.W.2d 687, 689 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.) (citations omitted). Persons whose responsibilities are functionally comparable to those of a judge are also immune from liability. *Blue Cross Blue Shield of Tex. v. Juneau,* 114 S.W.3d 126 (Tex.App.-Austin, 2003, no pet. h.) (citing *Butz v. Economou,* 438 U.S. 478, 507, 510–13, 98 S.Ct. 2894, 2911, 2912–14 (1978)). Texas courts use the federally conceived "functional approach" to determine if one who is not a judge is nonetheless entitled to judicial immunity. *See W. Capital Fin. Servs. Corp.*, 961 S.W.2d at 689. This analysis entails determining "whether the activities of the party invoking immunity are 'intimately associated with the judicial process,' *i.e.,* whether the party is functioning as an integral part of the judicial system or as an 'arm of the court.'" *Id.* (citations omitted).

Like other officials, administrative officials may sometimes enjoy absolute judicial immunity, but only when performing functions closely associated with the judicial process. *See Cleavinger v. Saxner,* 474 U.S. 193, 199–202, 106 S.Ct. 496, 499–501, 88 L.Ed.2d 507 (1985); *see also Butz,* 438 U.S. at 504–08, 98 S.Ct. at 2909–11.[29] Some factors to consider in determining whether an administrative official enjoys absolute judicial immunity are "(a) the

need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger,* 474 U.S. at 202, 106 S.Ct. at 501; *see also Juneau,* slip op. at 6–7 (recognizing Supreme Court's adoption of same factors). However, administrative officials generally receive no more than qualified immunity and are granted absolute immunity only in "exceptional situations" in which the application of absolute immunity is "essential." *See Cleavinger,* 474 U.S. at 201, 106 S.Ct. at 500–01; *Butz,* 438 U.S. at 507, 98 S.Ct. at 2911.

The trustees cited neither here nor below any case holding that pension trustees performing functions like theirs are entitled to absolute judicial immunity, as opposed to the usual qualified immunity. I have found no such Texas authority. Nor have the trustees explained or produced evidence showing what "exceptional circumstances" justify application of the absolute privilege here, how they were functioning "as an integral part of the judicial system or as an 'arm of the court,'" or how factors like those set out in *Cleavinger* and *Butz* weigh in favor of absolute immunity for them.[30]

---

mon-law claims against only the trustees in their individual capacities, not against the Fund.

**29.** *Cleavinger* and *Butz* involved constitutional wrongs, not torts such as those here. However, Williams argued without objection here and below that *Cleavinger* and *Butz* applied, and Texas courts have applied the general judicial-immunity principles from federal civil-rights cases to tort claims in state court.

*See Delcourt v. Silverman,* 919 S.W.2d 777, 785 n. 3 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (concluding that no reason existed not to apply the basic derived-judicial-immunity principles from federal opinions concerning civil-rights violations to state-court tort claims).

**30.** And I note that several of the *Cleavinger* and *Butz* factors appear to weigh against absolute judicial immunity for the trustees, giv-

I would thus hold that the Fund and the trustees did not conclusively prove that the trustees were entitled to the affirmative defense of absolute judicial immunity. Accordingly, I would sustain issue 14.

## D. Absolute Legislative Immunity

In issue 13, Williams argues that the trial court erred in granting summary judgment for the trustees on the ground that they were entitled to absolute legislative immunity in their individual capacities "for any claims arising out of the promulgation of the guidelines." I agree.

The trustees had the burden to prove this affirmative defense as a matter of law. *See Lopez v. Trevino,* 2 S.W.3d 472, 473 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.). The Fund and the trustees asserted below and argue here that "[w]hen the Board promulgated the guidelines ..., the trustees were acting in a quasi-legislative capacity, and this conduct was specifically within the trustees' statutory authority." In support, the trustees cited only the former retirement statute's provision giving the Fund's board power to "adopt for the administration of the fund written rules and guidelines not inconsistent with this Act."[31] *See* former TEX.REV.CIV. STAT. ANN. art. 6243e.2, § (2)(j)(1).

Courts have extended legislative immunity beyond legislators to other individuals performing legitimate legislative functions. *See In re Perry,* 60 S.W.3d 857, 860 (Tex. 2001). Whether the function that the ac-

tor performs is legislative depends upon the nature of the act. *Id.* For example, courts have sometimes looked at the nature of the facts used to reach the decision. If the underlying facts on which a decision is based are "legislative facts," such as generalizations concerning a policy or a state of affairs, then the decision is legislative; if the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. *See Lopez,* 2 S.W.3d at 473–74; *Bartlett v. Cinemark USA, Inc.,* 908 S.W.2d 229, 235 (Tex.App.-Dallas 1995, no writ). Courts have also stated that a function is legislative if the decision that it produces establishes a general policy, but that the function is adjudicatory if the resultant decision singles out specific individuals and affects them differently from others. *See Lopez,* 2 S.W.3d at 473–74; *Bartlett,* 908 S.W.2d at 235. A legislative function has thus been described as one "look[ing] to the future and chang[ing] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Bartlett,* 908 S.W.2d at 236 (quoting *Brown v. Griesenauer,* 970 F.2d 431, 437 (8th Cir.1992)).

I would hold that the Fund and the trustees did not conclusively prove that the trustees' actions in adopting the guidelines were entitled to absolute legislative immunity. Viewed in the light most favorable to Williams, the summary judgment evidence shows that the guidelines were adopted, at

---

en, among other things, that the Texas Administrative Procedure Act does not apply to the Fund's decisions and that none of the trustees is required to be a professional and independent hearing officer or administrative law judge. *See & compare Butz,* 438 U.S. at 513–14, 98 S.Ct. at 2914–15; *Cleavinger,* 474 U.S. at 203–04, 106 S.Ct. at 502.

**31.** The Fund and the trustees also relied on TTCA section 101.052, which exempts certain

claims against governmental entities from the TTCA's waiver of sovereign immunity when the claim is based on, among other things, the legislative functions of a governmental unit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.052 (Vernon 1997). Section 101.052 does not apply in this suit because Williams asserted his common-law claims against only the trustees in their individual capacities, not against the Fund.

least to some extent, as part of the trustees' discussion of and response to pending PSC requests, then applied retroactively to those pending requests, resulting in their denial. The effect of the guidelines' adoption was thus at least partially specific to individual members. Therefore, the guidelines not only "look[ed] to the future ... to be applied thereafter to all or part of those subject to its power," but they also worked retroactively against individual firefighters like Williams. *Compare, cf., R.R. Comm'n v. Houston Natural Gas Corp.*, 155 Tex. 502, 289 S.W.2d 559, 562 (1956) ("[Rules setting] Utility rates as rules of conduct are prospective only and do not in any manner involve an 'adjudication' of a rights arising from a 'past' controversy. It is true that the fixing of rates requires a study of existing and past facts, but the rate as promulgated is not 'res adjudicata' of any fact so studied.").

Additionally, the trustees have repeatedly asserted that their adoption of the guidelines was based solely on their interpretation of the former retirement statute's PSC provision. A statute's interpretation is generally a judicial act, not a legislative one. *Cf. Johnson Controls, Inc.*, 813 S.W.2d at 566 ("The resolution of this issue involves construction of the statutes cited, which presents a question of law.... A question of law is primarily judicial in nature.").

I would thus hold that the Fund and the trustees did not carry their burden of showing that the trustees' adoption of the guidelines was entitled to absolute legislative immunity. Accordingly, I would sustain issue 13.

## E. Conclusion

I would hold that the Fund and the trustees did not carry their burden of proving the trustees' affirmative defenses as a matter of law. I would thus hold that the trial court erred in granting summary judgment on Williams's common-law claims against the trustees in their individual capacities.

## CONCLUSION

I would grant Williams's rehearing motion and deny the Fund and the trustees' joint rehearing motion as moot. I would also reverse the judgment to the extent that it was rendered in favor of the Fund and the trustees in their individual capacities and remand the cause. I would further instruct the trial court, upon remand, to render a declaratory judgment in favor of Williams concerning the Fund's interpretation of the former retirement statute's PSC provision that underlay the guidelines and the PSC determination. I would affirm the judgment to the extent that it was rendered in favor of the City.